O'CONNOR, Respondent, v. BONNEY, Appellant.

(231 N. W. 521.)

(File No. 6926. Opinion filed June 24, 1930.)

*Corrigan & Walton,* of Aberdeen, for Appellant.

*Campbell & Fletcher,* of Aberdeen, for Respondent.

BROWN, P. J. In April, 1928, plaintiff employed defendant to extract eight teeth. In the operation defendant administered to plaintiff nitrous oxide as an anæsthetic which rendered plantiff entirely unconscious during the operation. As soon as the teeth were extracted plaintiff began coughing, and this coughing continued throughout the following summer. One lung became abscessed after the extraction of the teeth. On the trial of this action for damages she testified that about a month after the operation, during a coughing spell, there was expelled from her lung a portion of a tooth and some absorbent cotton, and, in the following September, during another coughing spell, she coughed up another piece of tooth. She says that these foreign substances were allowed

to get into her lung through the negligence of defendant while extracting her teeth. From judgment on a verdict in her favor, and from an order denying a new trial, defendant appeals.

■ In the conduct of the operation defendant used cotton packs at the back of the mouth to prevent blood or other foreign matter from getting into the stomach or lungs. It appears that bleeding was much more profuse than is ordinarily the case, and defendant changed the packs a number of times during the operation, which lasted in all about seven minutes. Testimony in the case is to the effect that, under the anæsthetic administered by defendant, physical control is relaxed and it would be easier for foreign matter to be swallowed or inhaled while under the anæsthetic. During the operation plaintiff was tilted back in the chair in a semi-reclining position, and it is the contention of her counsel that when defendant saw that there was such an unusual quantity of blood he should have tilted the chair slightly forward so as to lessen the likelihood of any foreign substance being inhaled or swallowed. It is also claimed that defendant was negligent in using cotton packs instead of gauze packs. It is contended that with gauze packs portions of the packing could not have been inhaled or swallowed and that other substances such as the pieces of teeth could not so easily get past the gauze pack into the throat or lungs as with cotton packing. However, a number of dentists who had quite extensive practice testified that cotton packs were usually employed in such an operation, and one of them, an expert from St. Paul, testified that after long experience with both gauze and cotton packing he had abandoned the gauze and used cotton packing exclusively because he deemed it the better practice. A number of the witnesses who testified that the use of gauze packing was the better practice were not dentists but practitioners making a specialty of surgery of the nose and throat, and defendant contends that, as they were not dentists, it was error to admit their testimony. We do not think that it is necessary to be a dentist in order to be able to express an opinion in regard to the proper practice of packing the mouth to prevent blood or other foreign matter getting into the stomach or throat of a patient. One practicing any form of surgery that would cause extensive bleeding in the mouth or throat would be as competent to testify to proper methods of packing to prevent such blood getting into the throat or lungs as a dentist.

The case was tried twice. On the first trial the jury disagreed. On that trial three dentists, Dr. Willson, Dr. Fisher, and Dr. Weidenbach testified as witnesses for defendant; none of them were called by either side on the second trial. But on the second trial on cross-examination of defendant, plaintiff's counsel asked: "Q. You heard Dr. Willson who was called as a witness for you in the other trial of this case?"

An objection to this as "not proper cross examination, Dr. Willson not having testified before this jury," was overruled.

"A. I did, yes, sir.

"Q. You heard him testify that he thought the best method would be to pack each one of these apertures as soon as it was opened to stanch the flow of blood and keep a clear field to work in?"

This question was not objected to and defendant answered, "Yes, I heard him say that." On examination of plaintiff as a witness in her own behalf she was asked if, on the former trial, she heard Doctors Willson, Fisher, and Weidenbach "who were called by defendant as witnesses in the case, testify," and she answered that she did. The record then shows the following:

"By Mr. Fletcher (plaintiff's counsel) : Q. Did you hear what Dr. Willson said with reference to the procedure he would have followed if he found a patient in the condition you were, with reference to bleeding?

"Mr. Corrigan: "This line of testimony is objected to as being wholly hearsay, wholly incompetent, not admissible for any purpose in this case at this time and not the best evidence. (Objection was overruled and exception taken.)

"A. Yes, sir.

"Q. You heard Dr. Willson state as one of the witnesses for Dr. Bonney, if he had been handling the case, he would have made some effort to stop the bleeding before he proceeded with the operation.

"Mr. Corrigan: This is objected to as not the best evidence, wholly incompetent, no foundation laid and leading. (Objection was overruled, to which ruling the defendant excepted.)

"A. Yes, I did.

"Q. I will ask you if you heard Dr. Fisher testify in that case as a witness for Dr. Bonney:

"Q. What do you think of the suggestion of Dr. Willson as to the packing of these different openings where this blood was coming as fast as it did, do you think that would have been a good idea in this case, even for a general practitioner? A. Perhaps it would, yes. Q. Did you hear that?

"Mr. Corrigan: We object to the question as not the best evidence, no foundation laid and as leading, incompetent and not tending to prove or disprove any of the issues. Which objection was overruled by the court and exception taken.

"A. Yes, sir, I did.

"Q. Did you hear him further testify:

"Q. What would be the object of or benefit of it? A. It would help keep the field of operation clear.

"Q. The more blood there is the more danger there is of aspirating foreign matter. Did you hear Dr. Fisher so testify on the trial of this case?

"Which question was objected to on the following grounds: We object to this line of testimony and to the attorney reading to the witness a part of the purported record of the last trial for the reason same is not the best evidence, and there is no foundation laid for its introduction in evidence and it does not tend to prove or disprove any issue and is wholly incompetent and leading. (Objection was overruled to which ruling the defendant excepted.)

"A. Yes, sir.

"Q. Did you hear Dr. Weidenbach testify as a witness for the defendant on the former trial. A. I did.

"I will ask you if you heard his testimony about as follows:

"Q. What do you think of packing the teeth to stop further bleeding? A. I never done that, myself.

"Q. What do you think of the idea? A. It is a good idea.

"Which question was objected to upon the same grounds as to the last preceding question. (Objection was overruled, to which ruling the defendant excepted.)

"A. Yes, sir."

Dr. Wells, an Aberdeen dentist, was a witness for defendant and the following cross-examination took place.

"By Mr. Fletcher:

"Q. You testified before in this case, did you not? A. Yes, sir.

"Q. Did you hear Dr. Willson's testimony? A. Yes, sir.

"Q. Did you hear him say he thought it might be a good idea to stop the flow of blood, stanch the flow of blood, by packing the apertures that were open?

Mr. Walton: This is objected to as incompetent. irrelevant, immaterial and not the best evidence no foundation laid for the introduction of Dr. Willson's evidence in this case. (Objection was overruled and an exception taken by the defendant.)

"A. Yes, sir. I heard his testimony. I heard him say that."

Another witness for defendant was Dr. Stephens, a dentist in Aberdeen, and on his cross-examination the following occurred:

"Q. Now, Dr. Willson suggested that it might have been a good plan to have stopped the flow of this blood, or stanched it by inserting in the apertures as he removed the teeth, packs of cotton to retard the flow of blood for the purpose of keeping the blood from collecting in the mouth as much as possible because the presence of a large amount of blood in the mouth increased the danger to the patient. What do you think of the idea?

"Mr. Walton: This is objected to for the reason it is wholly incompetent, irrelevant, immaterial, that it relates to testimony of Dr. Willson which is not in evidence in this case. Dr. Willson not having been sworn to testify. (Objection was overruled and to which ruling the defendant excepted.)

"A. I can only give you my opinion. I would not think much of it. I do not think that would be the way to stop the flow of blood. I would change packs as often as necessary and keep mopping it up and go on with the work."

In 22 C. J. 431 it is said: "It is universally agreed that the party seeking to use the former testimony must show that it is impossible for him to procure the attendance and testimony of the witness." This rule is approved and followed in Wren v. Rehfeld, 37 S. D. 201, 157 N. W. 323.

There is no claim that each of the three witnesses whose testimony on the former trial was thus indirectly placed before the jury was not easily available for personal attendance and examination at the trial, and the rulings of the court were not the less erroneous because the evidence was introduced indirectly in the form of questions by plaintiff's attorney than if it had been offered directly by the stenographer's transcript of the evidence given by

the witnesses on the former trial. It is true that part of the evidence of Dr. Willson thus indirectly put before the jury was elicited by a question not objected to on cross-examination of the defendant, but similar evidence by Dr. Willson in greater detail was elicited on cross-examination of other witnesses, and by means of questions to which proper objection had been made, and the whole of the former testimony of Dr. Fisher and Dr. Weidenbach, which was thus indirectly placed before the jury, was introduced by means of questions to which proper objections were interposed and overruled. Respondent's counsel contends that such evidence was properly admitted and prints the following in quotation marks, "Testimony of third persons, as witnesses in another case, is always admissible against a party, if the latter is bound thereby, because of his having vouched for their credibility and impliedly asserted that fact by calling them as witnesses," and cites as supporting the quotation, Knapp v. Brotherhood of American Yeomen, 149 Iowa, 137, 126 N. W. 336, 338; Knights of Modern Maccabees v. Gillis, 59 Tex. Civ. App. 109, 125 S. W. 338; Dowey v. Driscoll, 203 Ill. 480, 68 N. E. 56. We have been unable to find the quotation in any of these cases and none of them support the contention of respondent. In Knapp v. Brotherhood of American Yeomen it is said: "It may be conceded that when a litigant asserts on a trial a *fact* by calling witnesses to prove the same, their testimony *thereto* may be introduced on a subsequent trial as in the nature of admissions if material to the issues." (Italics ours.) But there is no showing that either of the witnesses, Willson, Fisher, or Weidenbach were called upon by defendant on the former trial to prove any fact placed before the jury as part of these witnesses' testimony by the questions asked of the various witnesses by plaintiff's counsel. In 2 Wigmore on Evidence, § 1075, the circumstances, under which the testimony of a witness on a former trial may be given in evidence on a subsequent trial against the party who called him, are discussed at some length, and it is clearly stated that, except where it is shown that the attendance of the witness cannot be procured, such testimony can only be admitted in so far as it was given to prove a specific fact by the party calling him, in which case it would be admissible as an assertion of such fact by the party calling the witness; but it is further said that such testimony cannot be used for the purpose of proving all the state-

ments that it may contain, but only in so far as it shall appear to have been used to establish a given fact or facts. The distinction is also clearly pointed out by the New Jersey Court of Appeals in Bageard v. Consolidated Traction Co., 64 N. J. Law, 316, 45 A. 620, 621, 49 L. R. A. 424, 81 Am. St. Rep. 498, where the court says: "Of course, a party is not bound in one trial by the testimony of a witness produced by him upon a previous trial of the same issue. He may have been disappointed in such testimony. It may have been false or mistaken testimony. But, where the point sought to be established is that the plaintiff had previously put forth a different claim, it is permissible to prove, not only that he himself asserted it in testimony, but also that he procured others to support him."

The permission of the questions heretofore quoted, setting out the claimed former testimony of Doctors Willson, Fisher, and Weidenbauch, was reversible error.

 Among the grounds of the motion for a new trial was irregularity in the proceedings of the court and the adverse party, whereby defendant was prevented from having a fair trial. This was based upon an affidavit of W. F. Corrigan, one of defendant's attorneys, to the effect that during the closing argument of plaintiff's counsel to the jury, the trial judge, the court reporter, and the clerk of the court, were all absent from the courtroom for a period of about forty-five minutes, and that while they were so absent plaintiff's attorney in his closing argument stated, in substance, to the jury: "The dental profession is so close a corporation that I could not get a dentist in this town to testify in this action and could not even get Dr. Howard W. Thomas, the plaintiff's dentist, to come here and testify." By reason of the absence of the trial judge, court reporter, and clerk, no exception could be taken in the record to said statement by defendant's counsel. A rebutting affidavit by plaintiff's attorney who argued the case before the jury does not deny the absence of the judge, reporter, and clerk, but says that during his argument he was not aware of such absence, and that what he said on the matter referred to in Corrigan's affidavit was, in substance, this: "Counsel has asked us in his argument why we did not call Dr. Thomas. The answer to his question is in the testimony of his own witness, Dr. Clark, who gave the reasons why it is impossible to get one dentist to tes-

tify against another and that is no doubt the reason we could not get Dr. Thomas to testify in behalf of his patient in this case." It is the duty of the trial judge to remain in the courtroom throughout the whole of the trial while any part of the trial is proceeding. The presiding judge is an integral part of the trial court, and ought not to be absent for any period while the trial is proceeding. In this case it appears that not only the judge but the court reporter was absent, and neither the trial court nor this court ought to be left to conflicting affidavits of interested and partisan attorneys to determine what, in fact, took place during such absence. Smith v. Sherwood, 95 Wis. 558, 70 N. W. 682; State v. Darrow, 56 N. D. 334, 217 N. W. 519. We do not say that what is claimed to have taken place during the absence of the judge and reporter in this case would alone be sufficient cause for reversal, but such practice is emphatically disapproved.

The judgment and order appealed from are reversed.

POLLEY, SHERWOOD, CAMPBELL, and BURCH, JJ., concur.