# BEAN, Appellant v. BEST et al., Respondents
## (93 N.W.2d 403)

(File No. 9690. Opinion filed December 6, 1958)
Rehearing denied December 20, 1958.

**Bangs, McCullen & Butler,** Rapid City, **Charles R. Hayes,** Deadwood, for Plaintiff and Appellant.

**Whiting, Lynn, Freiberg & Shultz,** Rapid City, for Defendant and Respondent Best.

**E. E. Sullivan,** Rapid City, for Defendant and Respondent Steele.

SMITH, J. Plaintiff complains of false arrest and imprisonment at the hands of the defendants, and prays for her resulting compensatory damages. The jury awarded her damages in the sum of $1,000. Asserting she had been denied a fair trial, she moved for a new trial which was denied. She has appealed.

The defendant, Glenn Best, was the sheriff of Pennington County, South Dakota, during 1955. The defendant Steele was then an owner and executive of a rental business at Rapid City in that county. On June 12, 1955, a woman who signed her name as Helen Baker, and gave her address as 417 Skyline Drive, Lead, rented a 1954 Chevrolet from Steele's company. In the course of that transaction she exhibited a driver's license issued to Helen Baker at Deadwood. When the car was not returned in a week as promised, Steele made an investigation at Lead and Deadwood. Information gained during that investigation and examination of a photograph caused him to believe the person to whom he had delivered the Chevrolet was the plaintiff, Zelda Bean, of Deadwood, who had deserted her husband and children on or about June 13, 1955. There-

upon, he swore to a complaint charging Helen Baker with embezzlement, and predicated on his complaint, a warrant was issued and delivered to the defendant sheriff directing the arrest of Helen Baker. Investigation and search were made on the theory that it was Zelda Bean who had rented the automobile. Several months later plaintiff was located at a boarding house in Omaha, Nebraska, where she was living and known as Mrs J. J. Coates. Acting under the warrant commanding the arrest of Helen Baker, Sheriff Best instructed officers at Omaha to arrest plaintiff. On November 19, 1955, those officers went to the boarding house, read the warrant to plaintiff and placed her under arrest. She protested that she was not Helen Baker, told him her name was Zelda Bean, and asserted her innocence of the charge of embezzlement. She was thereafter held by the sheriff and imprisoned at Omaha and Valentine, Nebraska, and in the county jail at Rapid City until the 13th day of December 1955.Throughout the period of her imprisonment she repeated her protest of innocence on many occasions. That she was telling the truth was indicated by a lie detector test made on December 5th. The record details her experiences in being booked, finger printed, and questioned and in court appearances, and describes the three jails in which she was held. She also described the many extreme discomforts she suffered and the distress of mind and illness of body occasioned by her arrest and incarceration. On December 13, 1955, word came to the sheriff that one Norma Jean Cooper, alias Helen Baker, had been apprehended at St. Joseph, Missouri, and the missing Chevrolet had been traced at another point. Thereupon plaintiff was released. A preliminary hearing was never held. It was conceded at the trial, that so far as known, plaintiff never had used the name of Helen Baker, and no evidence that she had ever been known by that name was introduced. After hearing the evidence the trial court instructed the jury that plaintiff had been falsely arrested and imprisoned and directed a verdict for plaintiff and against the defendants for such compensatory damages as the jury should find proximately resulted from such arrest and imprisonment. As indicated the jury re-

turned a verdict for plaintiff in the sum of $1,000. Other matters revealed by the record will be mentioned in connection with our discussion of particular propositions argued by plaintiff.

The plaintiff asserts she suffered prejudice at the trial by reason of the failure of the trial court to grant her motions to strike the affirmative defense of the sheriff.

By the assailed defense the sheriff sought to justify the arrest because of his official position, the issuance of the warrant by the municipal court, the delivery thereof to him, the receipt by him of information from a reliable source which he had reason to believe and did believe that plaintiff was person intended to be named as defendant in said warrant, the arrest of plaintiff and her release as soon as he learned of the error. Before and at the trial plaintiff moved to strike this defense. Her motions were denied. Plaintiff asserts that these rulings by the court induced the belief on the part of her counsel that the trial court was of the view that pleaded facts could be established in justification of the arrest or in mitigation of actual damages. Hence as the trial advanced they did not object when the defendants' counsel inquired of prospective jurors if they would consider the fact that the sheriff acted in good faith and with probable cause, and when testimony was introduced in support of the allegations of the described defense.

Before the case was submitted to the jury the trial court became convinced that the facts alleged in the affirmative defense of the sheriff could neither be considered in justification of the arrest and imprisonment nor in mitigation of plaintiff's actual damages. Accordingly, by its instructions the jury was told that plaintiff had been falsely arrested and imprisoned and it was only to determine the amount of her compensatory damages. The jury was also admonished in words as follows:

"In the examination of the jury, defendant Best's attorney inquired of some of you as to whether you would consider the fact that the defendant Best acted in good faith and with prob-

able cause, some of you stated in answer to this question that you would. However, you are instructed that it is the law that good faith and probable cause on the part of both or either of the defendants is not a defense to this action. The good faith and probable cause of the defendants or absence thereof in arresting the plaintiff is not to be considered by you for any purpose whatsoever and such good faith cannot tend to reduce the compensation (sic) damages to which the plaintiff is entitled."

On the one hand, plaintiff complains that much of the trial was guided by the court's original view to the effect that the facts alleged in the sheriff's affirmative defense could be considered both in justification of his acts, and in mitigation of damages, and during this period such an impression had become fixed in the minds of the jurors as to render them incapable of completely complying with the admonition of the trial court. On the other hand, we understand counsel for defendants to say that the original view of the court was sound, and in any event if it erred in its original rulings, those errors were cured by its instructions.

■ It is our holding that the conclusion of the trial court as reflected by its instructions is well grounded. The fact that the sheriff acted in all good faith and with probable cause may not be taken into account in determining the damages which will compensate plaintiff. Cullen v. Dickinson, 33 S.D. 27, 144 N.W. 656, 50 L.R.A., N.S., 987, Ann.Cas.1916B, 115. In 22 Am.Jur., False Imprisonment, § 109, it is written,

"* * * Although there exists what may be construed as a conflict of authority upon the question whether compensatory damages may be mitigated by proof of good faith, mistake, probable cause for arrest, or lack of malice, this results from a failure of the courts, in some instances, to state the entire rule where it is not essential to the particular decision, rather than from the absence

of uniformity in view. The true rule is that such evidence is not admissible in mitigation of compensatory damages, but all the facts or circumstances surrounding the arrest or imprisonment which tend to show good faith on the part of the defendant and to rebut the existence of malice on his part are admissible to mitigate exemplary or punitive damages."

 In the circumstances revealed by the record, the arrest and imprisonment of Zelda Bean were not privileged. It is provided by § 11, Article VI of our state constitution: "The right of the people to be secure in their persons * * * against unreasonable * * * seizure shall not be violated, and no warrant shall issue but upon probable cause supported by·affidavit, particularly describing * * * the person * * * to be seized." The express requirement of this section is that the affidavit upon which a warrant can be issued shall particularly describe the person to be seized. In our opinion the provision contemplates a like particular description or the naming of the person to be seized in the warrant which commands such seizure of a person. Zelda Bean was not named or otherwise described in the warrant under which the sheriff purported to act. There is neither allegation nor proof she had ever used or was known by the name of Helen· Baker. To justify her arrest, predicated upon the warrant received in evidence, would be repugnant to our constitution. We deem the rule formulated by Restatement, Torts, to be expressive of our fundamental law. It is there written, § 125,

"An arrest under a warrant is not privileged unless the person arrested, (a) is a person sufficiently named or otherwise described therein and is, or is reasonably believed by the actor to be, the person intended, or (b) although not such person, has knowingly caused the actor to believe him to be so."

 In urging that the sheriff was privileged in the circumstances revealed by the record, counsel direct our attention to SDC 34.1616 which authorizes the use of any name in a warrant when the name of the defendant is

unknown, and to the authorities collected following O'Neill v. Keeling, 227 Iowa 754, 288 N.W. 887, 127 A.L.R. 1050 at page 1057, and Wallner v. Fidelity & Deposit Co., 253 Wis. 66, 33 N.W.2d 215, 10 A.L.R.2d 745. We put SDC 34.1616 out of consideration because Zelda Bean's name was known; for that reason we deem the section to be without application. In passing we observe that the cited section does not obviate the necessity of describing the person to be seized. We have studied the decisions contained in the annotations supra which bear on our problem, but prefer to ground our holding on the cited provision of our Bill of Rights.

It is very doubtful whether, in view of the evidence introduced by plaintiff and of the court's instructions, this error of the court could be said to be prejudicial. Because of the result I reach, I do not labor the point.

Plaintiff complains next because, through interrogation of her with reference to specific conduct, the court, over her objections, permitted counsel to make an attack upon her character. It is her position that the court erred in permitting such an attack because her character was not in issue, and if it be assumed that her character was placed in issue, it was error to permit it to be evidenced by particular acts. The points thus raised must receive separate consideration.

Was the character of plaintiff placed in issue? The text of 22 Am.Jur., False Imprisonment, § 112, to which our attention is directed by counsel, reads: "The general rule is that evidence of character and reputation is not admissible unless put in issue by the very proceeding itself. This rule is applied to actions for false imprisonment, under which it is usually held that the plaintiff's character is not put in issue, and proof of his bad character in mitigation of damages is excluded, * * *." Whether this general rule is controlling here must be determined from a consideration of the pleadings.

The action, as we have indicated, is for compensatory damages; no fact is alleged which would support a recovery of exemplary damages. Cf. Buell v. Greene, 66 S.D. 615,

287 N.W. 509. In her complaint plaintiff alleges that as a result of the false arrest and imprisonment she "was deprived of her liberty, lost earnings, incurred expenses for Attorney fees, suffered pain of body and mind, suffered humiliation and embarrassment, and suffered permanent personal injuries to her nervous and digestive system, all to her damage in the amount of $77,500.00." In answer to this allegation defendant interposed only a general denial.

█ In § 567 Pomeroy's Code Remedies the author points out the obvious truth that "the plaintiff may, by making unnecessary although material averments in his complaint or petition, greatly enlarge the scope of the general denial * * *." By her allegation on the one hand and the general denial on the other hand, one of the issues joined was whether the plaintiff had suffered humiliation, embarrassment, and pain of mind, and if so to what extent, and thereby it became permissible for defendants to prove that these elements of claimed damage were never actually suffered or that her suffering was not as severe as she claimed. 25 C.J.S. Damages § 96, p. 643. Cf. concurring opinion of the late Justice Cardozo in McClelland v. Climax Hosiery Mills, 252 N.Y. 347, 169 N.E. 605, at page 608, adopted in Fleckenstein v. Friedman, 266 N.Y. 19, 193 N.E. 537.

In resolving the issue of the extent of plaintiff's emotional distress occasioned by defendants' acts, is her character relevant? The question seems to answer itself. Truth is revealed by giving thought to extremes of disposition. Can it be doubted that a refined and virtuous lady would suffer greater humiliation because of arrest and imprisonment, and be more sensitive to the surroundings plaintiff describes, than a brazen prostitute? Between these extremes, as disposition varies so would emotional distress from such an experience vary. Hence the probative value of the actual character or disposition of the particular individual in assessing damages for suffering from such a tort.

█ From § 905, Restatement, Torts, we quote the following statements with approval. (d) "A person who has a cause of action for a tort may be entitled to recover as

an element of damages for that form of mental distress known as humiliation, that is, a feeling of degradation or inferiority * * *. This state of mind may result from * * * imprisonment." (i) "The length of time during which pain or other harm to the feelings has been or probably will be experienced and the intensity of the distress are the two factors to be considered in assessing the amount of damages. In determining this, all relevant circumstances are considered, including sex, age, condition of life; and any other fact indicating the susceptibility of the injured person to this type of harm." And continuing "The extent and duration of emotional distress produced by the tortious conduct depend upon the sensitiveness of the injured person."

Was it permissible to evidence plaintiff's character or disposition by inquiring of her about her conduct? After considering such factors as probative value, undue prejudice, unfair surprise, confusion of issues, and the necessity of its use, Wigmore, Evidence, 3d Ed.,§ 202 concludes: "It may be seen, then, that (apart from the doctrine of Unfair Surprise) everything points toward the propriety of allowing the use of particular instances of conduct to prove character wherever character is by the law of the case a proposition to be proved." It is worthy of note that he then makes clear that his reference to the law of the case comprehends "the remedial law, i. e. as affecting the mitigation of damages." The same paragraph includes the suggestion "The only satisfactory mode of decision is to consider by itself each instance where character may be in issue, note the application of the various reasons, and solve the problem for that instance; bearing always in mind these two general tendencies or policies operating respectively for admission and for exclusion."

 Of the policies mentioned in § 202, Wigmore, Evidence, supra, which have influenced the courts in determining the admissibility of particular conduct as evidence of character, our major concern, as applied to the case in hand, has been with reference to the factor of undue prejudice. As we have indicated, we do not deem the matter of relevancy to be open to debate. Unfair suprise

is not here of marked importance because the inquiries were directed to plaintiff as a witness. We are not dealing with extrinsic evidence of character. For the same reason the inquiries made did not tend to confuse the issues. The test of necessity favors admission. Other evidence, such as of reputation, would be indecisive. at best in demonstrating the measure of plaintiff's emotional distress. Only her actual character could fairly indicate the sensitiveness of this plaintiff. The assailed inquiries were intended to establish facts which would support an inference that plaintiff's moral standards are so low as to render it improbable that her sense of degradation from arrest and imprisonment was as great as she indicated in her testimony. The adverse impression evidence of bad conduct undoubtedly made on the minds of the jurors, and the probability they permitted it to have controlling influence in considering elements of damage as to which it is without relevancy, give us pause. To assume that plaintiff's character is not of the best is not to do away with the justness of her cause of action. She has been confined in a common jail for upwards of twenty days, denied all liberty, and has testified to serious physical suffering because the food lighted up chronic ailments. For these and other elements of damages she was entitled to full compensation. In addition she was entitled to damages for whatever emotional distress she actually suffered. However, this is but one aspect of the matter. The defendants are also to be considered. If plaintiff had been permitted to stand before the jury in a false light as a virtuous and sensitive mother, even-handed justice in the admeasurement of damages could not have been done. On balance, we have concluded that the only fair course was to have permitted the inquiries, but to have carefully admonished the jury as to the limited relevancy of the evidence of character.

We have not overlooked the fact that the questioned inquiries were made of plaintiff as a part of her cross-examination, and hence that her credibility was involved. We are also aware that the weight of jurisdictional authority favors such inquiries of plaintiff as a witness with reference to sexual morality to test her credibility. 65 A.L.R. 410.

We have determined to reserve decision on that matter until it arises in a case where character is not admissible on other grounds.

The trial court denied the request of plaintiff to permit the jury to view the jail in which she was confined. Because I am persuaded that such a view was essential to a realistic appraisal of the emotional impact upon plaintiff of her unfortunate experiences, and no sound reason existed for excluding the jury from the jail, I am convinced that plaintiff was prejudiced by this ruling, and hence that the judgment should be reversed. As my respected associates do not concur in this view, I have deleted my reasoning.

■■■ The brief of the plaintiff, for which the Hon. Charles R. Hayes admits sole responsibility, contains statements reflecting on the fairness and integrity of the learned trial judge which are without warrant. Our order will be that the brief be stricken from our records, and costs therefor be not taxed.

ROBERTS, J. (concurring specially).

■■■ I concur generally in the reasoning and conclusions expressed by Judge SMITH. I do not, however, agree that it was error for the trial court to deny plaintiff's request that the jury be permitted to view the county jail. SDC 33.1322 recognizes the right of the trial court to permit inspection in jury cases "When in the opinion of the Court it is proper". Whether a view is proper and to be ordered rests in the sound discretion of the court. Denial of permission to view the county jail was not in my opinion an abuse of discretion.

It is urged that there was misconduct on the part of one of counsel for defendant Best which served to deprive plaintiff of a fair and impartial trial. Counsel stated to the jury that he was a "little nervous and apprehensive" as he made his argument and he wanted the jurors "to realize" that they stood between his client and "financial disaster". Counsel for plaintiff immediately objected to the statement and requested the court to admonish the jury as to its impropriety. This was overruled. Counsel then continued: "As I said, there is $77,500 here at stake. Maybe

that doesn't look like financial disaster to some people, but it does to my client * * * But I don't want someone coming into this courtroom and asking because of a lot of shame and humiliation from something else to punish Glenn Best, who made an innocent mistake, and that is all it is". It is contended that in the absence of any claim for punitive damages the financial circumstances and punishment of a defendant could not be considered and that an argument susceptible of the implication that the jury may take into account such factors was erroneous and prejudicial.

■■■■■ This court in Kloppenburg v. Kloppenburg, 66 S.D. 174, 280 N.W. 209, 210, said: "This court, from its beginning, has insisted that counsel keep within the issues when arguing cases to the jury and has not hesitated to reverse judgments where counsel have transgressed the rule. State v. Kaufmann, 22 S.D. 433, 118 N.W. 337; Egan v. Dotson, 36 S.D. 459, 155 N.W. 783, Ann.Cas. 1917A, 296; Lindsay v. Pettigrew, 3 S.D. 199, 52 N.W. 873; Id., 10 S.D. 228, 72 N.W. 574; O'Connor v. Bonney, 57 S.D. 134, 231 N.W. 521; Cooper v. Holscher, 60 S.D. 83, 243 N.W. 739." Plaintiff was entitled to a verdict for the amount of damages proved regardless of the ability of the defendants to pay or its ultimate financial effect upon them. 15 Am.Jur., Damages, § 345; see also cases collected in annotation in 32 A.L.R.2d 9. The argument complained of was without justification in the evidence and was calculated to arouse sympathy and to influence the jury in determining the amount of its verdict.

■■■■■ Defendants earnestly insist that if the argument of counsel was improper it could not have been prejudicial. We recognize that before an error can be complained of it must have been harmful to the substantial rights of the party appealing. Sejnoha v. Buchanan, 71 S.D. 220, 23 N.W.2d 142. Whether an error is probably prejudicial depends generally upon the circumstances of the particular case. Allen v. McLain, 75 S.D. 520, 69 N.W.2d 390; Dwyer v. Christensen, 77 S.D. 381, 92 N.W.2d 199. There might be some support for the contention if the error stood alone. We examine the record as a whole and determine therefrom

whether an error was probably prejudicial. The pleadings presented the issue of good faith and probable cause. Jurors upon their voir dire were interrogated on assumption that this was a defense and evidence to establish justification was received. The trial court before submission to the jury yielded to the contention that such evidence had no bearing upon the right of plaintiff to recover compensatory damages and the jury was admonished accordingly. This state of the record and the many sharp exchanges between opposing counsel resulting perhaps from overzealousness including the incident when counsel for defendant Best interrupted the argument of other counsel to the jury and asked the court to have the husband of the plaintiff excluded from the courtroom are considerations in determining the likelihood of prejudice.

Many abuses in argument may be corrected by the prompt admonition of the court to the jury and this court will not interfere because of improper argument which has been sufficiently counteracted by the action of the trial court. Although the court indicated that in his opinion the "remark of counsel" regarding punishment of defendant Best "may be going a little far", he overruled the objection thereto and instructed counsel to "proceed". As already stated, prior objection to the line of argument under consideration was overruled without comment. The jury may well have construed these rulings at least in part as sanctioning the argument of counsel. An examination of the record as a whole in my opinion sustains the claim of probable prejudice and requires a reversal of the judgment.

The judgment is reversed.

RENTTO, P.J., and HANSON and BOGUE, JJ., concur with ROBERTS, J.