. STATE, Respondent, v. CHRISTIANSEN, Appellant.

(190 N. W. 777.)

(File No. 5014.   Opinion filed November 18, 1922.)

1.   Witnesses—Cross-examination—Questions   on   Cross-examination   of   Impeaching   Witness   Held   Supported   by   Sufficient   Foundation.

A question propounded to an impeaching witness as to a conversation with a witness for the adverse party held not objectionable as not laying a proper foundation by showing the time and place of the conversation, and the names of the persons participating therein, where the names of the participants and the occurrence of such conversation, as well as the time

and place thereof, appeared in the direct and cross examination of the witness sought to be impeached.

2.   Witnesses—Impeachment—In Impeaching Witness, Substance of Inconsistent Statements Made by Him Is Sufficient.

Where in a prosecution for larceny the testimony of the sheriff was given to impeach the testimony of a witness by showing inconsistent statements, it was sufficient if the substance of the statements made by witness was given.

3.   Criminal Law—Trial—Attorneys—Jury—Remarks by Prosecuting Attorney in Closing Arguments Held Not Prejudicial Error.

In a prosecution for larceny, a statement by the prosecuting attorney in his closing argument that the wife of accused said to her husband in the presence of another, shortly after the alleged theft, that "he should not have taken the horse," whereas the record showed that she did say, "the horses were given to my husband," held not prejudicial, where the remark was not an intentional misstatement, and the judge on objection stated that he could not recall that such was the testimony, and admonished the jury that they would have to consult their own recollection of what the evidence was.

4.   Criminal Law—Trial—Instructions—Appeal and Error—Failure to Request Instruction or Improper Argument Held a Waiver of Error.

Where in a prosecution for larceny accused objected to a statement of prosecuting attorney in closing argument, but failed to request a reprimand and proper instructions, he cannot for first time on appeal assign error.

5.   Larceny—Sufficiency of Evidence—Evidence Held Not to Show that Horse Was Taken by Fraud and Stealth and with Intent to Deprive Owner Thereof.

In a prosecution for theft of a horse, held, the evidence was sufficient to sustain finding of jury that the horse was taken by accused by fraud and stealth and with intent to deprive owner thereof.

6.   Larceny—"Stealth"—Taking of Horse from Open Range Held a Taking by "Stealth" Within Statute.

The taking of a horse in broad daylight from an open range under circumstances precluding detection by the owner is a taking by "stealth" within Rev. Code 1919, Sec. 4210.

Appeal from Circuit Court, Harding County; Hon. Raymond L. Dillman, Judge.

Peter Christiansen was convicted of grand larceny, and he appeals. Affirmed.

*John T. Heffron* and *Robert C. Hayes,* both of Deadwood, for Appellant.

*Byron S. Payne,* Attorney General, and *E. D. Roberts,* Assistant Attorney General, for Respondent.

Appellant, contending that one who innocently acquires property is not guilty of larceny on account of any subsequent wrongful appropriation, cited:   State v. Demerly (S. D.), 168 N. W. 167; Guest v. State (Tex.), 5 S. W. 840; State v. Lindley, 83 N. W. 257; 13 S. D. 248; Bond v. State, 24 Tex. App. 570, 5 Am. St. Rep. 908; Richard v. State, Tex. Cr. App., 116 S. W. 587; Guinn v. State, Tex. Cr. App., 45 S. W. 694; Roman v. State, Tex. Cr. App., 142 S. W. 913; Cody v. State, Tex. Cr. App., 45 S. W. 568; Billard v. State, 30 Tex. 367, 94 Am. Dec. 317; Tucker v. State, Tex. App., 2 S. W. 893; People v. Disperati (Cal.), 105 Pac. 617; People v. Miller (Utah), 11 Pac. 514; Wilson v. State (Ark.), 131 S. W. 336; Hill v. State (Wis.), 15 N. W. 445; Stokely v. State, Tex. Cr. App., 6 S. W. 538; State v. Rigg, (Ida.), 70 Pac. 947; Cooper v. Commonwealth (Ky.), 52 L. R. A. 136; Mitchel v. State (Tex.), L. R. A. 1916C, 580; State v. Hay (N. C.), 16 S. E. 410; Lee v. State (Tex.), 122 S. W. 389.

(1)   To point one of the opinion, Respondent cited: 40 Cyc. 2687; Kelley v. State (Ark.), 202 S. W. 49; People v. Pack (Cal.), 185 Pac. 881; Colondro v. State, 125 N. E. 354; State v. Hughes, 8 S. D. 338; Vol. 5 Jones on Evidence, Par. 846; Newell v. Taylor, (S. Ca.), 54 S. E. 212.

(4)   To point four, Respondent cited:   State v. Guffey, 39 S. D. 84, 163 N. W. 679; State v. Waitman, 42 S. D. 5, 172 N. W. 508.

(5) and (6)   To points five and six, Respondent cited: Rev. Code 1919, Sec. 4210; Chanock v. U. S., 267 Fed. 612; 11 Am. Law Rep. 799, and note; 18 Am. & Eng. Enc. of Law, 506; Porter v. State, 8 Ohio App. Rep. 231; State v. Coombs (Me.), 92 Am. Dec. 610; State v. Anderson (Minn.), 33 Am. Rep. 445; King v. State, 72 So. 552; People v. Gurdey, 3 Pac. 492; Territory v. Dowdy (Ariz.), 124 Pac. 894; State v. Sego (Ia.), 140 N. W. 802; Smith v. Commonwealth (Ky.), 112 S. W. 615; Bailey v. State (Ark.), 122 S. W. 497; Stoddard v. State (Wis.), 112 N. W. 453; King v. State (Ala.), 72 So. 552.

SHERWOOD, J. Defendant was found guilty by a jury in the circuit court of Harding county, of the grand larceny of a saddle horse belonging to one Albert M. Witt. The horse was branded "Circle L" on the right shoulder, and was taken from the open range in Harding county about July 12, 1919, and two or three days later was found by said Witt and the sheriff of Harding county in defendant's barn in Lawrence county, about 130 miles distant from the range.

Defendant has appealed from the verdict and judgment of the court and assigns seven errors on which he relies for reversal of such judgment.

The first error assigned is in overruling his objection to the following question asked Sheriff Dehlinger by the state's attorney, for the purpose of impeaching the witness Nall:

"Q. I will ask you whether or not you were present Monday morning of this week in the state's attorney's office, the office of Mr. Bennett, and did you hear in substance, this question asked Mr. Albert Nall, the same boy who testified this morning in this case, 'Did you see any other horse in the barn at the time you took Christensen's saddle horse out of there?' A. Yes, sir; I heard that question asked.

"Q. Did you hear the answer he made to that? A. Yes, sir.

"Q. What was it?

"Mr. Heffron: We object to that for the reason absolutely no foundation has been laid for it; no time nor place is fixed as required under the rule; and the question was not put to the witness in the language in which it was put to the sheriff.

"Court: He may answer. (Exception duly noted.)

"A. He said he could not describe the horse."

It appears by the plaintiff's brief and additional abstract that the state's attorney, on cross-examination of the witness Nall, had asked the following questions:

"Q. Did you talk with the state's attorney the other day concerning this matter? A. I did.

"Q. Did Mr. Dehlinger, the sheriff of this county, ask you then if you knew the description of the other horse that was in the barn, and did you not reply to the sheriff that you did not pay any attention to him and could not give a description of it? A. No, sir.

"Q. You did not make such a statement at all? A. No, sir."

It further appears from the record that the witness Nall was called to the stand by the defendant, and on his direct examination testified that he had tied the Witt horse in the Christiansen barn; that Christiansen was not there at the time, and he had left the horse tied with a rope around its neck; that he had been subpoenaed as a witness for the state and had been examined by the attorney for the state, and on his cross-examination he had described the Witt horse quite minutely, and had testified positively that he left him tied in the Christiansen barn and there was no other horse there, and had further been cross-examined by the state as above set forth.

[1]  It will be seen that Nall had not only testified on his direct examination to this conversation with the state's attorney, but had his attention again called to it on his cross-examination, and again admitted having such a conversation, and the question fixed the time the conversation occurred as "just the other day." Nall was then asked if Sheriff Dehlinger did not ask him in that conversation if he knew the description of the other horse, referring clearly to the Witt horse Nall had just testified he left tied in the barn by a rope. These questions fixed the time and place with reasonable certainty and gave the names of both the parties with whom the conversation occurred. Nall's attention was then particularly directed to the question plaintiff claimed was asked him by Sheriff Dehlinger and to the answer which Sheriff Dehlinger later testified the witness Nall made to him. It is true that plaintiff in asking the question of the sheriff, said, "Did you see any other horse in the barn?" and, in asking the question of Nall, said, "Did you know the description of the other horse in the barn?"

[2]  But no one was misled by the slight difference in the form of the questions, and, in substance, they were the same and related to the same conversation and the same horse; and the sheriff answered in the exact words he claimed were used by the witness Nall, and to which the witness Nall's attention had been particularly directed, to-wit, that Nall said he "could not give the description of the other horse that was in the barn."

It is sufficient if the substance of the statement made by the witness is given. 5 Jones on Evidence, par. 846; State v. Hughes,

8 S. D. 338, 66 N. W. 1076; Wharton, Criminal Evidence, vol. 1, p. 1000.

[3] Another assignment of error is based upon remarks made by the state's attorney in his closing argument, which were excepted to by the defendant, in which he said in substance "that the wife of Peter Christiansen said to him (Christiansen) that he (Christiansen) should not have taken these horses." Immediately on this statement being challenged by the defendant, the state's attorney said:

"The state's attorney desires to make a further statement in reference to the statement to the jury. It was in reference to a conversation had between the sheriff, Mr. Dehlinger, and Christiansen's wife in Christiansen's presence."

No request was made by defendant that the court reprimand the state's attorney; and no instruction was asked of the court instructing the jury to disregard the evidence or otherwise. But it appears from the record that the court upon its own motion, said:

"Well, proceed. Where there is a disputed question as to what the record contains, the jury will have to recall what the testimony was the best they can. I do not recall there was any evidence of that character."

It appears from the record that Sheriff Dehlinger had a conversation with Mrs. Christiansen, in the house in the presence of her husband, and that this was the conversation the state's attorney alluded to in his remarks; and, while the record does not show that Mrs. Christiansen used the words that he (referring to her husband) "should not have taken the horses," she did say "the horses were given to my husband," and that this horse was given to him by Eyster and Hett for helping to bring the horses down.

We do not think, under the evidence, that this statement was prejudicial to the defendant or an intentional misstatement of the testimony on the part of the state, or that it amounted to independent testimony on the part of the state's attorney.

[4] But, aside from this, we think this specification of error is not sufficient to justify the court in reviewing the same. No error of the court is assigned with reference thereto. No request was made of the court to give any instruction to the jury con-

cerning the statement, or even to reprimand the counsel for making it. The only thing done by counsel was to object to the statement.

We think it was the duty of the defendant, if he desired to save this exception for the appellate court, to challenge by a proper objection the statement made by the state's attorney and obtain a ruling upon the objection thereto, and that the defendant should then request the trial court to give a proper instruction thereon; and, failing to do so, he cannot now be heard to complain. State v. Knudson, 21 N. D. 562, 132 N. W. 149, and authorities cited therein.

The remaining five errors are based upon four propositions, which will be discussed together: First, insufficiency of the evidence in that defendant came innocently into the possession of the horses and could not thereafter separate them from his own; second, that the taking of the horses was not accomplished by fraud or stealth, because they were taken from the open range or delivered to Eyster and Christiansen openly by George Hett in the daytime and driven in the daytime; third, that, even if they were later appropriated by defendant to his own use, there was no intent to steal shown to exist at the time of the actual taking, but, if an intent to steal existed, it arose long after the innocent taking of the property and while it was in defendant's lawful possession; and, fourth, that none of the horses were ever in the possession of the defendant, Christiansen, but were in the actual possession of one Eyster and by reason thereof no larceny was shown, and a verdict should have been advised by the court.

Upon all those points the jury was very fully and fairly instructed by the trial judge. No exception was taken by the defendant to the instructions; and they became the law of the case and were very favorable to the defendant.

The evidence clearly shows that the defendant was employed by August Hett to go with one Eyster, who had been for some time in the employ of and was a tenant of August Hett, to get certain horses belonging to August Hett which were kept about 130 miles distant in Harding county on the open range used by George Hett and others, George Hett being a brother of August Hett; that the Hett horses were either branded "A. H. Lazy T." connected or "H. E. Lazy T." connected; that the Witt horses were

part branded "Circle L" on the right hip or "Circle L" on the right shoulder, one of the Witt horses having in addition what is called a bootleg in the brand. It further shows that these brands on the Witt horses were all clear and distinct.

Both Eyster and Christiansen had lived some years in the range country and owned horses there. We cannot believe but that both of them knew the August Hett brand before they started out to search for his horses. Christiansen and Eyster got seven or eight of the twelve or thirteen head of horses from the open range and put them in the George Hett corral.

Whether or not the horse of which Christiansen was charged with the larceny was taken from the range and put in the George Hett corral by Christiansen or by some one else does not appear; but he was in the Hett corral on the morning of July 12th and might have been put in by Christiansen. Both Christiansen and Eyster knew, on the morning of the 12th of July and before they took the horses out of the George Hett corral, that seven or eight of them belonged to Witt and had his brand upon them.

George Hett was anxious to get the Witt horses off his range and refused to let Christiansen cut them out in his corral for that reason and because he claimed the corral was not strong enough; but he and August Hett directed that they be cut out 7 miles below at the grade. Defendant, Christiansen, and Eyster claimed they attempted to cut the horses out four or five times after they reached the grade, and finally succeeded in cutting out three, leaving five of Witt's horses with them, and that they could not cut them out without putting them in a corral.

The undisputed testimony of Ward Van Horn shows there was a corral on the main traveled highway about a mile from the grade, and that there is a substanital corral on their place 15 miles south of Hett's place on the main traveled road. The horses were corralled, and Christiansen and Eyster stayed all night about 70 miles out of Hett's place at Stumbaugh's. They were again corralled, and they stayed all night at Lead. The Witt horses were then taken by them to Christiansen's place; and the horse in controversy was later found tied in Christiansen's barn.

It is admitted that no effort was made to cut out the Witt horses at Stumbaugh's place or at any time after the first day's drive. When the sheriff reached Christiansen's place on the 14th,

the Witt horse in controversy was found tied in his barn.   While it . is true that Christiansen said he was not the owner of the horse, he also denied knowing where the horse came from or whose it was; and his wife said, in his presence and in the presence of the sheriff, that the horse had been given to him by Hett for his services in driving the Hett horses down from Harding county; and he admitted the same thing to Sheriff Dehlinger, and also said that he intended to take the horse back after he had conferred with Mr. Hett.

We think it is immaterial whether Chrisiansen's intent to steal the Witt horse was formed before or after it was put into the George Hett corral, because defendant knew the horse he took was not August Hett's, and that it did not bear the August Hett brand when he took it; and, if he assisted in putting it in the George Hett corral, he was a trespasser by so doing.

If the horse was put in the George Hett corral by others and turned over to him and Eyster as Witt's horse to be cut out at the grade, he knew that George Hett had no control over the Witt horses and had no right to direct what should be done with them; and he was a trespasser when he took the Witt horses from the Hett corral to the grade, and neither he nor Eyster was ever lawfully in possession of Witt's horses.   The jury might well have found from defendant's failure to cut out the horses at the corral at the grade, or at the corral at Van Horn's 7 miles south of that, or at Stumbaugh's, that defendant intended to steal the horse at the time he took it.

[5]   We think there was ample evidence to sustain the verdict of the jury that the horse was taken by the defendant by fraud and stealth and with the intent to deprive the owner thereof.   Where there is sufficient evidence to sustain the verdict of the jury, the cause will not be reversed on appeal.   State v. Stumbaugh, 28 S. D. 50, 132 N. W. 666.

[6]   We think the taking of a horse or horses from the open range and far from any house, and where the taker has every reason to believe the owner will not be present and will not see the act, and that such taking will be kept from the owner and from the general knowledge of those interested, and where the taker relies on these facts in getting the property and intends to appropriate it to his own use, is a taking by stealth, fully as much

as it would be for a man who was driving along a lonely road and found an automobile broken down and found no one in sight to take the valuable parts of the car and appropriate them to his own use, or, having watched the driver of a car park it in a busy city street, and when 'the owner was out of sight of the car, to take it or valuable belongings from it and drive away; and, even though these things were done in broad daylight, we think they were done by stealth under the meaning of section 4210 of our statute (Rev. Code 1919).

The judgment and order of the trial court are affirmed.

Note—Reported in 190 N. W. 777. See American Key-Numbered Digest, (1) Witnesses, Key-No. 388(10), 40 Cyc. 2728-2732; (2) Witnesses, Key-No. 391, 40 Cyc. 2739; (3) Criminal Law, Key-No. 730(7), 16 C. J. Sec. 2243, 17 C. J. Sec. 3638; (4) Criminal Law, Key-No. 1037(2), 17 C. J. 3333; (5) Larceny, Key-No. 57, 62(1), 25 Cyc. 123, 129, 1921 Ann. to 25 Cyc. 123, 129, 1923 Ann. to 25 Cyc. 129; (6) Larceny, Key-No. 12, 1924 Ann. to 25 Cyc. 69.

On cross-examination as proper mode of proving conviction of crime for purposes of impeachment, see note 30 L. R. A. (N. S.) 846.

On misstatement of facts, or statement of facts not in evidence, by counsel in argument to jury, as ground for reversal, see note L. R. A. 1918D, 4.