BINEGAR, Respondent v. DAY, Appellant

(120 N.W.2d 521)

(File No. 10014. Opinion filed March 15, 1963)

**Stephens, Riter & Mayer** and **Robert D. Hofer,** Pierre, for Defendant and Appellant.

**Dudley R. Herman & John J. Simpson,** Gregory, for Plaintiff and Respondent.

HOMEYER, J. Plaintiff claims that his wife was injured in an automobile accident, and defendant has admitted his negligence was the cause of the accident. Damages are sought for the following: 1. Loss of consortium. 2. Expenses of medical treatment. 3. Future expenses of medical treatment. 4. Car damage. The jury awarded plaintiff damages in the amount of $13,115.46. Proof on items 2 and 4 totaled $4,115.46. Defendant appeals from the judgment and assigns as error among other things the order denying motion for new trial.

The questions presented for review are: (1) Does plaintiff have cause of action for loss of consortium? (2) Misconduct of counsel. (3) Error on admission of evidence and on instructions. (4) Sufficiency of the evidence and excessive damages.

We will first consider if plaintiff has a cause of action in this state for loss of consortium. Appellant asks the court to reconsider its decision in Hoekstra v. Helgeland, 78 S.D. 82, 98 N.W.2d 669, in which it was held that the wife had such cause of action, apparently implying therefrom that this court has recognized the husband's cause of action, although that specific question has not been presented. The Hoekstra case extended to the wife the right to sue for loss of her husband's consortium resulting from a negligent tort. Her right to sue for the so-called intentional or malicious tort was recognized in earlier cases, Moberg v. Scott, 38 S.D. 422, 161 N.W. 998, L.R.A.1917D, 732; Id., 42 S.D. 372, 175 N.W.559; Holmstrom v. Wall, 64 S.D. 467, 268 N.W. 423; Swanson v. Ball, 67 S.D. 161, 290 N.W. 482.

The weight of authority in this country is to the effect that the husband has a right to sue for loss of consortium resulting from negligent injury of his wife by a third person. See many cases collected and commented on in 21 A.L.R. 1517; 133 A.L.R. 1156. The legal writers on this subject agree that a husband should have, and in most states has, such a cause of action. Prosser on Torts, 2d Ed., pp. 698-705; 22 Mich.L.Rev. 1; 30 Col.L.Rev. 651; 38 Harv.L.Rev. 421, 622.

We are urged to hold that by virtue of our adoption of the Married Women's Act, Ch. 98, Laws 1887 (now revised into SDC 14.0207), all causes of action arising from a negligent tort accrue to the wife the same as a feme sole and the husband's right to sue for loss of consortium has been abolished. A few jurisdictions have so held. Marri v. Stamford St. R. Co., 84 Conn. 9, 78 A. 582, 33 L.R.A.,N.S., 1042; Bolger v. Boston Elevated Ry. Co., 205 Mass. 420, 91 N.E. 389; Helmstetler v. Duke Power Co., 224 N.C. 821, 32 S.E.2d 611; Clark v. Southwestern Greyhound Lines, 144 Kan. 344, 58 P.2d 1128. The Clark decision was based on a statute which gave the wife a cause of action for "services" and "domestic duties" and included consortium or companionship in such terminology. A great number of jurisdictions which recognize the right in the husband, with a lead case, Cook v. Atlantic Coast Line R. R. Co., 196 S.C. 230, 13 S.E.2d 1, 133 A.L.R. 1144, 1145, deny it to the wife, Page v. Winter, S.C., 126 S.E.2d 570. See annotation 23 A.L.R. 2d 1378 and compare with annotations in 21 A.L.R. 1517 and 133 A.L.R. 1156.

The husband has a common-law right to the wife's services, aid, comfort, society, and companionship, and conjugal affection, all generally embraced in the term consortium, and the great weight of authority is that such common-law right was not abrogated by passage of the Married Women's Acts. 27 Am.Jur., Husband and Wife, § 502, p. 101. City of Chattanooga v. Carter, 132 Tenn. 609, 179 S.W. 127, succinctly states the rule of the majority when it says: "The act does not deprive either the husband or wife of the conjugal relationship, with its duties and rights", and until positive and explicit legislation is enacted depriving the husband of such right, we hold that he is not deprived of the right to sue for the loss of the aid and society (consortium) of his

wife. The common law is in force and effect in this state, SDC 65.0103, except where it conflicts with the will of the sovereign power as expressed in the manner set forth in SDC 65.0102, and we hold that the Married Women's Act did not deprive the husband of his common-law right to sue for loss of consortium resulting from negligent injury to his wife.

██ We approve the language of the North Dakota court in Milde v. Leigh, 75 N.D. 418, 28 N.W.2d 530, 173 A.L.R. 738, a negligence case, where it was said:

"The cause of action in favor of the husband is not for the injury to the wife but for the damage to the husband on account of the loss of the wife's services and society and for the expenses incident to her care and cure. Spencer, Law of Domestic Relations, sec. 137, p. 130; Rogers v. Smith, 17 Ind. 323, 79 Am.Dec. 483; Thompson v. Ft. Branch, 204 Ind. 152, 178 N.E. 440, 82 A.L.R. 1413."

and 41 C.J.S. Husband and Wife § 401 a., p. 890,

"In the absence of statute to the contrary, a personal injury to a married woman caused by the tort of a third person gives rise to two causes of action, one for her personal pain and suffering, and the other for the husband's consequential loss of her society and services and for expense incurred for medical attention and nursing."

Robert Binegar at the time of trial was 34 years old and his wife was 26. They were married May 1, 1955, and have one daughter, Garnet, aged 3 at the time of the accident. Binegar was on the Pierre police force and earned $355 per month. His wife took care of the household. On the night of July 16, 1959, the family and a nephew, 6 years old, had attended a drive-in movie near Pierre and were returning home on U.S. Highways 14-83. Binegar was driving and his wife and daughter were in the front seat and the daughter had her head on her mother's lap. The nephew was in the back seat. Defendant's automobile approached from the opposite direction with bright lights on the wrong side of the road. Binegar slowed down and pulled to his extreme right and the vehicles collided. Before the accident, he noticed his wife sitting stiff and staring ahead. She screamed before the impact.

No one sustained any visible physical injury, but when Mrs. Binegar was at home she complained about a small bump on her head which disappeared after a few days. In August, 1959, she took the child to see Dr. Knowles, a psychiatrist at Sioux Falls, and later that same month she saw Dr. Leander, also a psychiatrist at Sioux Falls. Dr. Leander saw her eight times as an outpatient and then on February 29, 1960, she entered a Sioux Falls hospital where she remained 38 days and received electric shock and insulin treatments. After her release from the hospital and before trial on December 4, 1961, she had been seen by Dr. Leander as an outpatient 16 times and had one scheduled appointment after trial with an expectation that there would be additional appointments. Plaintiff noticed changes in his wife soon after the accident. She was more irritable, cross with the daughter, neglected her household duties, wanted to stay at home, broke dishes, tore the telephone from the wall, burned food, neglected her personal appearance, refused to talk, didn't take any interest in her husband's business affairs, had fear of driving in an automobile particularly at night, was cold, frigid, and only occasionally had sex relations with her husband. These same conditions continued after her release from the hospital with gradual improvement to the time of trial. Dr. Leander described Mrs. Binegar as having a shy introvert personality before the accident with a dormant neurosis which was triggered by the accident and developed into a schizo-affective disorder (complete removal from realism) that necessitated her hospitalization. The schizzo-affective disorder was absent on her hospital release and she showed gradual improvement to time of trial and the doctor expected a complete return to her pre-accident condition. At the time of trial, she still had a post-traumatic neurosis and phobia (exaggerated fear) of car travel and some of the other pre-hospital conditions still existed. Dr. Knowles, defendant's psychiatrist, agreed that there was a pre-accident neurosis which was triggered by the accident and that she was still suffering from a post-traumatic neurosis on June 8, 1961, when his deposition was taken, and she still had a phobia on auto travel. He expected that she would gradually recover and return to her pre-accident condition. Neither doctor gave a direct opinion on time before Mrs. Binegar would be restored to her pre-accident condition or the cost of

future medical treatment. Proof on special damages to time of trial included the following: doctor, $670; hospital, $899.51; drugs, $32.46; phone calls, $26.69; loss of time (husband), $360; meals, $155; babysitter, $295; travel, $1,260; car damage, $416.90, or a total of $4,115.56. Plaintiff's wife did not testify on the trial. She appeared with her sister momentarily during plaintiff's direct examination and he pointed her out to the jury. Other evidence will be referred to in discussion of various points.

Defendant claims seven instances of misconduct of counsel and contends that by reason thereof his rights were prejudiced and he did not receive a fair trial. The alleged misconduct begins with the opening statement and concludes with the final argument to the jury. From the pleadings the only issuable facts were causation, and if this was found, the amount of plaintiff's damages. Virtually all of the alleged misconduct and the action of the court thereon appears from the transcript so we are not confronted with any denial of what took place.

In his opening statement, plaintiff's counsel used a blackboard on which he wrote under the word "special" these figures and items of damage, viz.: travel, $1,260; hospital bill, $899.51; doctor bill, $670; drugs, $32.46; phone bill, $26.69; loss of time, $360; meals, $155; baby-sitting, $295; car damage, $416.90, or a total of $4,115.56. In writing these figures, he referred to some of the items as reasonable and that Mr. Riter (defendant's counsel) had paid some of the expense. By stipulation, plaintiff's wife was examined by defendant's doctor before trial and defendant's counsel paid the expense. At the conclusion of the opening statement, the figures were erased. The defendant objected to the use of the blackboard, but it was allowed by the trial court.

SDC 1960 Supp. 33.1307 reads:

"(1) The plaintiff or party having the burden of proof shall state the issues and the general nature of the evidence he expects to produce in substantiation of the issues by stating what he claims the issuable facts to be, without argument and without nam-

> ing or identifying any particular witness or exhibit by
> which he expects to prove any of such issuable
> facts;"

The purpose and object of the opening statement is to briefly
and concisely state the issues involved in the litigation and fa-
miliarize the trial judge and jury with the nature of the case and
the evidence to be produced. Fossum v. Zurn, 78 S.D. 260, 100
N.W.2d 805. It is not evidence. It should not be argument. Counsel
should not name or identify any witness or exhibit. At this stage
of the trial, the jury is peculiarly alert and impressionable and
the importance of confining the opening statement to the language
and intent of the statute is obvious. The use of the blackboard
in the opening statement in the manner employed by defend-
ant's counsel was improper and the statements of counsel in con-
nection with its usage and his comments on the items of special
damage were highly irregular. We recognize that some courts
have permitted blackboards and charts to be used in opening
statements without resultant error or prejudicial error. Four-
County Electric Power Ass'n v. Clardy, 221 Miss. 403, 73 So.2d
144, 44 A.L.R.2d 1191; but we believe that in the interest of secur-
ing a fair trial, the trial court should discourage its use in the
opening statement as unnecessary and without substantial as-
sistance to the jury in understanding the issues.

In final argument, counsel for defendant said:

"* * * Dr. Leander who is the doctor for Pauline
Binegar don't know how long they (neurosis and phobia)
will last. They got another appointment in February of
1962 for her. Be some more loss of time, some more doc-
tor bills, some more babysitting, some more food, another
450 miles of travel, future. Doctor Leander, you heard his
testimony, he said maybe another four or five years,
maybe she might have a relapse and be this way for
the rest of her life—"

Objection was made as a misstatement of evidence and motion
for mistrial for misconduct was denied. Dr. Leander had testified
that he was unable to give a prognosis of how long the disability
would last and in answer to plaintiff's leading question: "It could
possibly continue four, five or six years?" he answered, "It could

conceivably. I don't think so." With reference to average cases of this kind he thought treatment lasted from six months to three to four years depending on frequency of visits. He also testified that Mrs. Binegar might possibly suffer a relapse or recurrence of a psychotic condition.

There was no claim that Mrs. Binegar was permanently injured and no issue for jury determination on permanent loss of consortium and the statement was improper and beyond the issues of the case. Cooper v. Holscher, 60 S.D. 83, 243 N.W. 739. Although wide latitude is allowed in argument, counsel should at all times confine his argument to the law, evidence, and issues of the particular case. 88 C.J.S. Trial § 169 p. 337.

Counsel also made this statement in final argument:

"* * * do you think fifty thousand dollars actual damages for this woman, what this man is suffering, probably continue to suffer in the future, is too much?"

Objection was made that this was not the woman's lawsuit, but the man's lawsuit, and that the statement was highly improper and prejudicial, which was overruled by the trial court without admonition to the jury. Of course any reference to the woman's damages was highly improper and an examination of the record reveals that much evidence as to her personal treatment at the hospital, pain and suffering, was permitted without objection and which is a part of her personal claim. In this type of litigation, where there are separate claims, those of the husband and those of the wife, it is of the utmost importance to limit the jury to consideration of what is included in the case.

Plaintiff's wife was one of ten children and plaintiff's counsel in closing argument said: "Not one incident of mental disorder in that whole family, just Pauline." Medical reports and testimony was to the effect that there was no knowledge of any witness to mental illness among other members of her family. The statement of counsel was not an established fact supported by the evidence.

Defendant's counsel argued that neighbors should have been called to testify in substantiation of the household disruption caused by plaintiff's wife's illness and then plaintiff's counsel

said, "Certainly he's checked into this case, he's called up Mrs. Schwartz, (plaintiff's landlady) called up the lady downstairs." Objection was made that this was untrue and improper argument and overruled. This statement was outside the record and improper. It is generally held not improper to comment on failure to call witnesses, 88 C.J.S. Trial § 184 p. 361, and we fail to see as retaliation or justification a statement of fact that defendant's counsel had called the landlady and the lady downstairs without any evidence whatsoever to that effect.

 Counsel for the plaintiff prior to trial had in his possession three written medical reports of plaintiff's wife's condition from her psychiatrist. Two of these were dated respectively February 18, 1960 and June 2, 1960, and the third was undated and apparently made after the last date. Written requests for copies of such reports were made to plaintiff's counsel by defense counsel which were ignored and then motion for production was made pursuant to discovery statutes and denied. The correctness of such ruling is not challenged in this appeal and we make no comment thereon. The assignment of error pertains to misconduct of plaintiff's counsel in stating to the court and to defense counsel that such reports were not in possession of plaintiff or his counsel. Plaintiff's counsel has not denied that such reports were in his possession on the date of the motion and has not denied that he informed the court that neither he nor plaintiff had written reports from Dr. Leander. Prejudice is claimed that by reason of such claimed misconduct defendant was not able to properly prepare for trial. We do not condone the action of plaintiff's counsel and if an attempt is made to intentionally mislead the court as to the existence or location of these reports, irrespective of the court's ruling, counsel are rightfully subject to criticism. It would be a violation of his oath on admission to practice. See SDC 1960 Supp. 32.1109. A review of the entire record leads us to conclude that defendant's counsel knew or should have known that medical reports had been made by plaintiff's doctor and that they would be produced on trial.

 In final argument, plaintiff's counsel related incidents from his war experiences in an attempt to draw a parallel to what had happened to Mrs. Binegar. He used the pronoun "I" and

vividly portrayed his observation of how different people reacted under stress in battle. He attempts to justify this line of argument as pertaining to self-evident facts and matters of common knowledge. We do not agree. Objection was made with motion for mistrial. It was denied without admonition to the jury.

The rule is generally stated in 88 C.J.S. Trial § 181 a., p. 355.

"It is not proper for counsel to state facts of his personal experience, or his own knowledge of the facts, unless he has testified thereto as a witness, or to make his argument an avenue for the presentation of unsworn testimony, or for him to insinuate that he has knowledge of facts."

Clark v. Rowatt, 349 Ill.App. 396, 110 N.E. 2d 663. The line of argument here employed is improper and devoid of support in the record. It should not have been permitted.

■■■ We recognize that counsel are allowed wide latitude in argument and that a court should not too narrowly limit the manner and form of presentation and the inferences and conclusions to be drawn from the evidence, so long as unfair means are not employed to prejudice the jury. It is the primary responsibility of the trial court to regulate and control counsel in their arguments and a large discretion is permitted, and improper argument and the effect thereof has many times been determined to be without prejudice by prompt and careful admonition. A plaintiff should not be penalized for the misstatements of his counsel and the granting of a new trial should not be used to discipline counsel. An appellate court should interfere only when from an examination of the entire record, it is convinced that there has been a miscarriage of justice.

■■■ Counsel for plaintiff at least impliedly concede that a substantial portion of their conduct was beyond the confines of proper argument, but earnestly urge that there was no prejudice and that it was for the trial court in the exercise of a sound discretion to determine whether the remarks were inflammatory and prejudicial. It has been repeatedly so held but in virtually all cases the trial court by prompt admonition rebuked counsel and advised the jury that they were to disregard such statements, and

the verdict of the jury was such that it could easily be assumed that they were not influenced, and that the verdict was not affected by passion and prejudice. The record here is devoid of admonitions by the court and in some instances the form and manner of argument was continued after it was called to the court's attention.

Counsel in this state know or should know from what was said in Bean v. Best, 77 S.D. 433, 93 N.W.2d 403, and the cases there cited that

> "This court, from its beginning, has insisted that counsel keep within the issues when arguing cases to the jury and has not hesitated to reverse judgments where counsel have transgressed the rule."

It can also be said that if any of the conduct set forth stood alone that we might conclude that it was without prejudice, but when we survey the entire record and the continued pursuit of what must be termed as a calculated course of misconduct, without admonition, we believe the claimed prejudice has been established. In coming to this conclusion we reiterate what has been said by this court in numerous previous cases that whether or not error is prejudicial generally depends upon the circumstances of a particular case. Bean v. Best, supra.

Other assignments of error have been considered but are not necessary for determination on disposal of this appeal.

The judgment is reversed.

ROBERTS and RENTTO, JJ., Concur.

HANSON, P. J., concurs in result.

BIEGELMEIER, J., concurs specially.

BIEGELMEIER, J. (concurring specially). Referring to a chart in the opening statement showing special damages plaintiff expects to prove, without argument, is a trial practice to be determined by the trial judge and subject to his control. It should be removed during the trial unless used in the oral argument as approved in the Four-County opinion cited by the court. Treating the court's statement as a cautionary admonition, I agree but

cannot do so if it is meant to eliminate it. As to plaintiff's closing argument of no mental disorder in plainiff's family, Ex. B and answers on cross-examination of plaintiff supported this statement and was proper. Otherwise, I concur in the opinion.