Glenn SCHLAGEL, Plaintiff
and Appellant,

v.

SOKOTA HYBRID PRODUCERS, a co-
operative, Defendant and Respondent.

No. 12466.

Supreme Court of South Dakota.

Argued Feb. 15, 1979.

Decided May 31, 1979.

Ronald L. Schulz of Loucks, Oviatt, Brad-
shaw, Green & Schulz, Watertown, for
plaintiff and appellant.

Frank E. Denholm of Denholm & Glover, Brookings, for defendant and respondent.

ANDERST, Circuit Judge.

This is an appeal from a jury verdict in favor of Sokota Hybrid Producers, a Cooperative, (Sokota) in an action for damages brought by Glenn Schlagel (Schlagel). We affirm.

A review of the trial record shows that the evidence produced was conflicting. Irreconcilable discrepancies appear between the testimony offered by Schlagel and that offered by Sokota. A summary of the evidence produced by Schlagel is as follows: That in May, 1976, Schlagel contacted Sokota's area supervisor, Alexander, and inquired of him a good sorghum to plant. Alexander stated "Sokota 320F" was a good sorghum that was low in prussic acid. Schlagel, relying on Alexander's statement, immediately purchased 100 pounds of Sokota 320F silage sorghum seed and planted it that same month. Along with the seed, Schlagel received a booklet prepared by Sokota which stated that Sokota "320F" would produce "the ultimate in silage sorghums," give "increased tonnage of high quality silage or green chop" and could "be used for winter grazing."

On the evening of September 26, 1976, Schlagel's son fed Schlagel's cattle some freshly cut Sokota 320F sorghum. The next morning, Schlagel discovered over sixty head of his cattle either dead or dying. He immediately telephoned his veterinarian and Alexander. Both men came to his farm. The veterinarian examined several of the dead cattle and was of the opinion they died of prussic acid poisoning. Schlagel and Alexander collected several samples of sorghum from the feedlot and the uncut fields. These samples were taken by Schlagel to South Dakota State University at Brookings for analysis. All the samples contained a high concentration of prussic acid.

Schlagel then initiated this action against Sokota on three theories: express warranty, implied warranty, and negligence in failure to warn. Sokota answered with a general denial together with the affirmative defenses of misuse of the product, intervening cause, assumption of the risk and contributory negligence.

Sokota's evidence showed the following facts: That Schlagel had over forty years' experience in the growing and feeding of sorghums. One of the dangers of feeding sorghum is prussic acid poisoning. Schlagel was aware of this danger. Alexander admitted discussing Sokota 320F sorghum with Schlagel over a cup of coffee. He denied making any statements or warranties that Sokota 320F was safe from prussic acid. Records show that Schlagel did not purchase the Sokota 320F seed until June 19, 1976. Further, Schlagel purchased and planted several other brands of silage sorghum seed at about the same time.

Sokota's evidence further showed the growing season was extremely hot and dry in the vicinity of the Schlagel farm. The crops experienced great stress. The first frost occurred on September 23rd in that area. There was expert testimony to the effect that stress from drought and frost will produce prussic acid in sorghum. There was also testimony that most farmers have green chop or uncut sorghum analyzed for prussic acid content after the first frost before feeding it to livestock.

Testimony of a veterinarian called by Alexander to examine the dead cattle was that he was of the opinion the cattle died of nitrate poisoning. To confirm his diagnosis, several of the animals were posted and samples were removed from their stomachs. These samples were given to Schlagel to deliver to South Dakota State University. Schlagel testified he delivered the samples, but the results of the analysis could not be produced. On cross examination, Schlagel could not be positive what was fed the cattle as he was not present for the feeding. Neither could he recall what had been fed to the cattle the day before or from what field it had been cut.

Appellant Schlagel raised six questions on appeal: (1) Did the court err in denying appellant's motion in limine to limit testi-

mony; (2) Did the court err in not granting a directed verdict for appellant on the issues of liability; (3) Did the court err in its instructions to the jury; (4) Were remarks made by respondent's counsel in closing argument prejudicial thus requiring a mistrial or a new trial; (5) Did the court err in not granting a new trial; and (6) Was the jury's verdict given under the influence of prejudice and insufficient evidence to substantiate it?

■ With the foregoing and other conflicting evidence in mind, we approach the questions raised on appeal. Schlagel's motion in limine sought to exclude all testimony that farmers generally obtain an analysis of silage sorghum for prussic acid content before feeding the same.

> The motion in limine is a useful tool, but care must be exercised to avoid indiscriminate application of it lest parties be prevented from even trying to prove their contentions. . . . [T]he motion in limine is not ordinarily employed to choke off an entire claim or defense, . . . . Rather, it is usually used to prohibit mention of some specific matter, such as an inflammatory piece of evidence, until the admissibility of that matter has been shown out of the hearing of the jury. *Lewis v. Buena Vista Mutual Ins. Ass'n*, 183 N.W.2d 198, 200 (Iowa 1971).

Under the pleadings and the testimony introduced in the instant case, the matter sought to be excluded was material and relevant. The court properly ruled in denying the motion in limine.

■ It is settled law in this jurisdiction that on a motion for a directed verdict the trial judge

> must accept that evidence which is most favorable to the party against whom the motion is sought, and indulge all legitimate inferences in his favor that can fairly be drawn therefrom. [citations omitted] If, when so viewed, there is any substantial evidence to sustain the cause of action or defense it must be submitted to the jury. *Myers v. Quenzer*, 79 S.D. 248, 254, 110 N.W.2d 840, 843 (1961).

Herein, the evidence was in conflict as to the essential elements of appellant's theory of express warranty, implied warranty and negligence. The trial court correctly denied the motion for a directed verdict and allowed the jury to resolve the disputed issues of fact.

■ The law is well settled that "Instructions to the jury must be considered as a whole and when as a whole it gives a full and correct statement of the law applicable to the case, they are not erroneous because the particular instructions taken alone may not have embodied all the law applicable." *Dwyer v. Christensen*, 77 S.D. 381, 390, 92 N.W.2d 199, 204 (1958). Further, "The burden is on the [appellant] to show not only error but also prejudicial error to the effect that under the evidence, the jury might and probably would have returned a different verdict if [appellant's] instructions had been given." *Lytle v. Morgan*, 270 N.W.2d 359, 362 (S.D.1978). We have reviewed the instructions given by the trial court along with those requested by appellant. We find no error. Taken as a whole, the instructions properly instructed the jury on all issues of express warranty, implied warranty and negligence as well as respondent's defenses thereto.

■ During closing argument counsel for Sokota made the following remarks to the jury:

> It isn't that I personally don't have a feeling for this gentleman and his family and that you don't but if you're going to award these kinds of damages, like you do in downtown New York for product liability and in California and elsewhere you're going to get rode as consumers. We all live in this consumer oriented time and there's nothing wrong with that. If you can make product liability stand, then you all better get ready for lawsuits because you all grow seeds and you all feed cattle. These are the problems of our times and they are not easy.

This line of argument is improper and without support from the evidence. Counsel for Sokota conceded at oral argument it was

beyond the confines of proper argument, but urges it was not so prejudicial as to constitute reversible error.

After the remarks by Sokota's counsel were made, counsel for Schlagel did nothing until opposing counsel finished his closing argument. He then approached the bench and requested a hearing in chambers. Outside the presence of the jury, and in chambers Schlagel's counsel then moved for a mistrial.* This motion was denied by the court. The parties then returned to the courtroom and counsel for Schlagel made his final closing argument to the jury.

In *Behseleck v. Andrus*, 60 S.D. 204, 244 N.W. 268 (1932), we quoted with approval from *Crumpton v. United States*, 138 U.S. 361, 364, 11 S.Ct. 355, 356, 34 L.Ed. 958, 960 (1891):

> "There is no doubt that, in the excitement of an argument, counsel do sometimes make statements which are not fully justified by the evidence. This is not such an error, however, as will necessarily vitiate the verdict or require a new trial. It is the duty of the defendant's counsel at once to call the attention of the court to the objectionable remarks, and request his interposition, and, in case of refusal, to note an exception."

Further on this subject we stated in *Binegar v. Day*, 80 S.D. 141, 120 N.W.2d 521 (1963):

> [I]mproper argument and the effect thereof has many times been determined to be without prejudice by prompt and careful admonition. A plaintiff should not be penalized for the misstatements of his counsel and the granting of a new trial should not be used to discipline counsel. An appellate court should interfere only when from an examination of the entire record, it is convinced that there has been a miscarriage of justice. 80 S.D. at 151, 120 N.W.2d at 527.

Appellant contends quite earnestly that a new trial should be granted because of these statements of counsel. Because appellant's counsel failed to object to the improper remarks immediately, however, the trial court was denied the opportunity to immediately admonish the jury to disregard them. After reviewing the motion in chambers and the entire record, we are not convinced that the trial court's refusal to grant appellant's motion for a mistrial constituted an abuse of discretion or that it resulted in a miscarriage of justice. *Olesen v. Snyder*, 277 N.W.2d 729 (S.D.1979).

■ To detail the facts which lead us to believe that the questions concerning the trial court's failure to grant a new trial and the insufficiency of the evidence to support the verdict are without merit would require us to expand on the evidence and would unduly prolong this opinion. Upon the whole record, we find that the case was fairly tried and that the verdict is abundantly supported by the evidence.

WOLLMAN, C. J., and DUNN and MORGAN, JJ., concur.

HENDERSON, J., concurs specially.

ANDERST, Circuit Judge, sitting for FOSHEIM, J., disqualified.

HENDERSON, Justice (concurring specially).

In the trial court's Instruction No. 4 to the jury, the trial court admonished the jury: "You must not consider as evidence

---

\* Complete remarks of counsel in chambers as follows:

MR. SCHULZ: May it please the court, the record may show that out of the presence of the jury and in the chambers of the court with opposing counsel present comes now the plaintiff and makes a motion for a mistrial in this matter for the reason and on the grounds of the statements of defendant's counsel in closing arguments to the jury to the effect that if they award a judgment in favor of the plaintiff in this matter, it will be money out of their pocket and thereby have no effect on anyone other than themselves, which is a reversal of a statement that insurance is involved. It's highly prejudicial to the plaintiff and implied if an award were given that consumers in American [sic] were the ones that would be hurt and they should take that into consideration in this matter.

MR. SCHULZ: Based upon these prejudicial remarks, I move for a mistrial.

any statement of counsel made during the trial."

In the trial court's Instruction No. 5 to the jury, the trial court advised the jury:

At the conclusion of the reading of these instructions, the attorneys for the respective parties will present to you their arguments of the case for your assistance in coming to a decision. The order of their appearance and the length of the time of their arguments is regulated by the Court. Statements, arguments, and remarks of counsel are intended to help you in understanding the evidence and applying the law as set forth in these instructions, but they are not evidence. *You should disregard any such utterance that has no basis in the evidence.* However, an admission of fact by an attorney for a party is binding on that party. (emphasis supplied)

These curative instructions sufficiently called the jury's attention to the premise that the statements of defendant's counsel were to be disregarded as evidence when the statements had no basis in the evidence.

In a civil action, plaintiff has opening and closing arguments. Before plaintiff's final closing argument, plaintiff's counsel made a motion for a mistrial based upon his adversary's arguments. I would construe this to be timely. To my way of thinking, simply waiting until your adversary completes his argument, going into chambers and immediately making a motion is a timely objection. Immediately upon conclusion of defendant's closing argument, plaintiff's counsel made his motion for a mistrial before the court in chambers. I believe this was timely. I therefore cannot agree with the majority opinion's language which would require counsel to immediately stand up and object.

In *Peters v. Hoisington*, 72 S.D. 542, 37 N.W.2d 410 (1949), no objection was made to wrongful arguments until the jury retired. This was deemed to be untimely. The facts in this case distinguish it from *Peters v. Hoisington*, supra.

*State v. Husman*, 66 S.D. 530, 287 N.W. 30 (1939), addresses the general issue of improper arguments and conduct of counsel. In that case, the defendant complained of certain alleged misconduct of the state's attorney in presenting the case to the jury. With one exception, counsel made no objection at the time the alleged improper remarks were made. The court was not requested to caution the jury against the force of such remarks. No exception appears to have been taken. Bluntly, counsel in *State v. Husman*, supra, did not protect his record. I would hold in this case that the plaintiff's counsel did protect his record. Before *all* of the arguments were heard in this case, and before the case was submitted to the jury, plaintiff's counsel objected to his adversary's arguments and made a record in chambers of the court. He made a motion for a mistrial.

*State v. Husman*, supra, quoted the language used in *State v. Christensen*, 46 S.D. 61, 67, 190 N.W. 777, 779 (1922), with approval:

"We think it was the duty of the defendant, if he desired to save this exception for the appellate court, to challenge by a proper objection the statement made by the state's attorney and obtain a ruling upon the objection thereto, and that the defendant should then request the trial court to give a proper instruction thereon; and, failing to do so, he cannot now be heard to complain. *State v. Knudson*, 21 N.D. 562, 132 N.W. 149, and authorities cited therein." 66 S.D. at 534, 287 N.W. at 32.

Then, in *State v. Husman*, supra, this court expressed:

This court adhered to the same rule in the case of *Behseleck v. Andrus, et al.*, 60 S.D. 204, 244 N.W. 268, 270, 88 A.L.R. 596, wherein it said, "For the purposes of review upon appeal, it is too late to take exceptions to argument of counsel to the jury *after the jury had retired*," and noted with approval the . . . case of *Crumpton v. United States*, [citation omitted] [which the majority cites herein]. 66 S.D. at 534, 287 N.W. at 32.

The point that I make is that counsel has not waived objection to improper argument if he makes his objection and record *before* the jury retires. See *Graham v. Simplex Motor Rebuilders, Inc.*, 191 Neb. 320, 215 N.W.2d 641 (1974). There is still time for the attorney making the misstatement and the court to rectify the damage.

It was wrong for counsel to argue as he so argued. He conceded this before the Supreme Court in his oral argument. Counsel acknowledged that his remarks were error but insisted that they were not prejudicial and that his adversary's objections were untimely.

I cannot agree that the objections of plaintiff's counsel were untimely and I must therefore depart from the majority opinion in this regard. I do believe, however, that the curative instructions given by the trial judge in this case aptly put before the jury an admonition that such type of arguments were not evidence and should be disregarded. The instructions were not requested by plaintiff's counsel; the court unilaterally gave them. In these situations, I would espouse that it is preferable to: (a) object to the misstatements in open court; (b) make a motion for mistrial in chambers; and (c) if the motion is denied, to specifically request an instruction.

Reviewing the arguments and the record as a whole, I could not reverse for misconduct of counsel unless I was convinced that the misconduct had a prevailing influence upon the jury to the detriment of the plaintiff. See 75 Am.Jur.2d § 315 (1974). In an agriculturally dominated county, the prevailing influence upon the jury was not the conduct of the lawyer in closing arguments; rather, it was the conduct of the farmer in feeding silage containing killing prussic acid to his cattle.