**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Arnold V. BULLIS, Defendant and Appellant.**

**No. 13344.**

Supreme Court of South Dakota.

Submitted on Briefs Nov. 17, 1981.

Decided Feb. 3, 1982.

Mark Smith, Asst. Atty. Gen., Pierre, for plaintiff and appellee; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.

Robert W. Swank of Hanson, Kaye, Stiles & Anderson, Mitchell, for defendant and appellant.

MORGAN, Justice.

The jury convicted Arnold Bullis (defendant) on criminal contempt charges stemming from his violation of a temporary restraining order. The temporary restraining order was issued pending his divorce. It provided that defendant restrain himself "[f]rom molesting the plaintiff in any way or interfering with her personal liberty and freedom, or in any way threatening bodily harm in any manner whatsoever . . . ." Additionally, defendant was required to pay his wife temporary support of $100 per month. Although defendant was also guilty of civil contempt, this appeal originates in the criminal conviction. We affirm the conviction of defendant for criminal contempt.

Debra Bullis, defendant's wife, signed an affidavit alleging defendant's noncompli-

ance with the court order on two grounds, failure to make payment as provided and to refrain from harassing her. The first ground was heard by Judge Wuest as a civil matter. A special prosecutor, however, was appointed to criminally prosecute defendant on the second ground. The special prosecutor sought an order to show cause with an affidavit based on information and belief. After a hearing, Judge Anderst ordered a jury trial.

At trial, a Northwestern Bell Telephone representative testified about a phone trap on the phone where defendant's wife temporarily resided. At 7:03 p. m. a phone call was made from the residence of defendant's parents to that of his wife's. Defendant's father-in-law answered. He testified that defendant said, "if Deb goes out tonight she's dead." Defendant's mother-in-law testified that another harassing phone call had been made at 11:00 a. m. that same day. Defendant's wife did not testify since defense counsel evoked the husband-wife privilege.

Defense counsel called defendant's mother and defendant as witnesses. The mother located defendant in her house between 6:50 p. m. and 8:30 p. m. on the date of the phone calls, but said he was drunk and asleep. She also testified that defendant and his father-in-law had fought on several occasions. The evidence conflicted as to who started each altercation.

After the jury returned a verdict for the State, Judge Anderst sentenced defendant to a jail term, a portion of which was suspended upon defendant complying with certain conditions.

On appeal, defendant argues that (1) the trial court lacked personal jurisdiction because the supporting affidavit was based on information and belief, (2) defendant was erroneously charged with criminal contempt instead of civil contempt, (3) the evidence was insufficient to sustain the guilty verdict, and (4) the trial court erred in not granting a mistrial motion where the prosecutor commented on defendant's assertion of the husband-wife privilege. We sustain the trial court on each issue.

Since the instant contempt was not committed in the presence of the court, it is constructive contempt subject to the procedures in SDCL 23A–38–2, unless it is civil in nature. The distinction between civil and criminal contempt is often confused. Wright & Miller, Federal Practice and Procedure, § 704. Contempt is civil where the contemnor may obtain relief if he acts according to a condition in the contempt order. In contrast, criminal contempt is unconditional. For example, the defendant is jailed or fined for a specific period or amount and cannot effect relief from the order. In any event, the same conduct can be subject to either criminal or civil contempt. *Gompers v. Bucks Stove & R. Co.*, 221 U.S. 418, 31 S.Ct. 492, 499, 55 L.Ed. 797 (1911); *United States v. United Mine Workers of America*, 330 U.S. 258, 67 S.Ct. 677, 699, 91 L.Ed. 884 (1947).

Since both civil and criminal contempts result in punishment, the distinction exists in the character and purpose of the punishment. "If it is for civil contempt the punishment is remedial, and for the benefit of the complainant. But if it is for criminal contempt the sentence is punitive, to vindicate the authority of the court." *Ibid.*, 31 S.Ct. at 498. In *Gompers*, the U. S. Supreme Court considered four factors in making the distinction:

(1) Refusal to do an act commanded is civil contempt, while doing a forbidden act is criminal contempt;

(2) Punishment for criminal contempt is unconditional, while the judgment for civil contempt is conditional in nature and can be terminated if the contemnor purges himself of the contempt;

(3) Civil contempt proceedings are entitled as a part of the main cause, while criminal contempt actions are brought in the name of the United States; and

(4) The notice in a criminal contempt proceeding must state that the proceeding is criminal in nature.

*De Parcq v. United States District Court for So. Dist.*, 235 F.2d 692, 699 (8th Cir. 1956).

 Here, the restraining order forbid defendant's interference with his wife's personal freedom. He committed a forbidden act by making harassing telephone calls. The action was in the name of South Dakota. At the first hearing, Judge Wuest informed defendant that a criminal action would be undertaken subsequently. Although the order to show cause failed to expressly indicate the action as criminal, such a technical error is not prejudicial where, as here, the defendant is afforded a jury trial. See, *United States v. United Mine Workers*, 67 S.Ct. at 697.

Defendant received suspension of all but fifteen days of the jail term so long as he complied with certain conditions; the terms of a one-year probation, counseling and no contact with Debra absent reconciliation. Admittedly, the character and purpose of these conditions were mixed. Probation vindicates the court, while the no-contact provision benefits the complainant. Despite this difficulty, defendant lacked ability to shorten the fifteen-day jail term or revise the probation terms or duration. The trial court properly tried defendant for criminal contempt.

 Defendant challenges the adequacy of an order to show cause issued on information and belief of the prosecutor. In *United Mine Workers of America*, 67 S.Ct. at 697, the Court addressed this issue. It held that Fed.R.Crim.Proc. 42(b) was not designed to eliminate this means of commencing criminal suits. Like Rule 42(b), SDCL 23A–38–2 requires notice stating the essential facts constituting the contempt charge.* Defendant's argument fails.

 Appellant's sufficiency of the evidence argument is primarily an argument attacking the credibility of the State's witnesses because of their animosity toward him. These points were all argued before the jury and are properly for the jury's determination. We find no error on this issue.

 South Dakota Codified Laws 19–13–28 makes defendant's claim of an evidentiary privilege improper for comment by the prosecutor. The parties agree that the prosecutor commented on defendant's assertion of the husband-wife privilege. Therefore, we must decide if the comment prejudiced defendant's trial. *State v. Havens*, 264 N.W.2d 918, 923 (S.D.1978) (unfair comment during opening argument); *State v. Kingston*, 84 S.D. 578, 174 N.W.2d 636, 641 (1970) (comment during trial). The trial court properly sustained defendant's objection and admonished the jury to disregard the prosecutor's statement. Admonishment deprives the error of prejudice. See *State v. Kidd*, 286 N.W.2d 120, 123 (S.D.1979). Defendant fails on this issue also.

We affirm the conviction of Bullis for criminal contempt arising from his violation of a court order.

WOLLMAN, C. J., and DUNN and FOSHEIM, JJ., concur.

HENDERSON, J., concurs in result.

HENDERSON, Justice (concurring in result).

As the sentence in the majority opinion "Admonishment deprives the error of prejudice" is oversimplistic considering our previous decisions on this point, I concur only in the results of this decision, not wishing to marry myself to such restrictive language. Refinements to this entire question of prosecutorial misconduct are found in the settled law of this state. If admonishment alone cures the error, a prosecutor possesses a license to act unjustly toward a defendant. I note that the trial court's jury instruction # 10 was a stock curative instruction: "Offered testimony not received or stricken out and statements of counsel not supported by the evidence or fair inference drawn therefrom should not be considered by you in arriving at your verdict."

Counsel for the state attempted to use defendant's wife as a witness to prove the

---

* SDCL 23A–38–2 parrots Fed.R.Crim.Proc. 42(b).

crime charged. Defendant objected, claiming the privilege afforded by SDCL 19–13–13. The objection was sustained and defendant's wife was thereupon excused from the witness stand. Knowing this, the prosecutor commented during final argument (according to defense counsel's motion in the transcript—there being no transcript of final arguments) that defense counsel prevented the wife from testifying. The trial court confirmed in chambers that the comment had been made and "it was error on the part of the State's Attorney to comment, that it is not prejudicial error and is not error of such magnitude to create mistrial." The prosecutor's comment was an improper tactic to gain a conviction by invoking a negative image of the defendant. By innuendo, the comment portrayed defendant as keeping information from the jury and thereby subverting truth.

In conjuction with this point, SDCL 19–13–28 provides:

> The claim of a privilege, whether in the present proceeding or upon a prior occasion, is not a proper subject of comment by judge or counsel. No inference may be drawn therefrom.

Defense counsel, according to the trial court, immediately objected to the prosecutor's comment and requested an admonition to the jury, which was duly given. No specific jury instruction pertaining to the improper remark was requested by defense counsel. *See State v. Christiansen*, 46 S.D. 61, 190 N.W. 777 (1922); *see also State v. Kidd*, 286 N.W.2d 120 (S.D.1979) (Henderson, J., concurring specially); *Schlagel v. Sokota Hybrid Producers*, 279 N.W.2d 431 (S.D.1979) (Henderson, J., concurring specially). Perhaps defense counsel was satisfied with the trial court's stock jury instruction # 10. A motion for mistrial was made in chambers by defense counsel after closing arguments, which was denied.

In *Kidd*, we said:

> However, no hard and fast rules exist which state with certainty when prosecutorial misconduct reaches a level of prejudicial error which demands reversal of the conviction and a new trial; each case

must be decided on its own facts. *State v. Webb*, [251 N.W.2d 687 (S.D.1977)]. Furthermore, we will not disturb the trial court's ruling on a motion for a new trial based on misconduct of counsel unless we are convinced there has been a clear abuse of discretion. *State v. Havens*, 264 N.W.2d 918 (S.D.1978); *State v. Burtts*, 81 S.D. 150, 132 N.W.2d 209 (1964); *State v. Norman*, 72 S.D. 168, 31 N.W.2d 258 (1948).

*Id.* at 121–122.

I join in the results of the majority decision believing that this case strains the outer limits of liberality in determining that the prosecutorial misconduct does not attain the level of prejudicial error. I do so because of the trial court's immediate admonition to the jury to disregard the prosecutor's statement and the aforementioned general curative instruction. I cannot say that the trial court clearly abused its discretion.

I pose this question: What advocative role shall our state's attorneys play in this never ending quest for justice, architects of fairness or engineers of victory?