1998 SD 124

**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Lyle Edgar NELSON, Defendant and Appellant.**

**No. 20356.**

Supreme Court of South Dakota.

Argued Oct. 20, 1998.

Decided Dec. 16, 1998.

Mark Barnett, Atty. Gen., Paul Cremer, Asst. Atty. Gen., Pierre, for plaintiff and appellee.

Jeff Larson, Minnnehaha County Public Defender's Office, Sioux Falls, for defendant and appellant.

KONENKAMP, Justice.

[¶ 1.] At inquiry in this case is whether a trial court must follow fundamental procedures for conducting a jury trial. Although it provided complete written instructions to the jury, the court at the close of the evidence failed to read all the instructions as required by law, including those on the presumption of innocence and the burden of proof. The court also sent out thirteen jurors to deliberate, over the strenuous objections of the State and with the uninformed consent of the pro se defendant. We conclude that these actions created plain error, cumulatively prejudicial to the integrity of judicial proceedings. We reverse and remand for a new trial.

### Facts

[¶ 2.] On March 12, 1997, the Sioux Falls Humane Society received a report of starving horses. Officer Dave Bartscher went to investigate. South Dakota was still in the throes of one of its severest winters. Four to six foot drifts extended across the dirt road leading to the pasture where the horses were kept and the ground was snow covered. Bartscher detected no tire tracks or footprints in the snow leading to the area. Inside a corral he found two dead horses and in the pasture, one "extremely thin" filly. In an old tire, the officer saw a small quantity of moldy feed, but he could find no provisions for water. A day later, the surviving horse was retrieved and treated. The two dead horses were autopsied, revealing that neither had any body fat at the time of death. Both died of chronic malnutrition. Lyle Nelson owned the horses.

[¶ 3.] Nelson was charged with three counts of inhumane treatment of animals, in violation of SDCL 40-1-27. Just before trial, he obtained permission from the court to represent himself, and his appointed lawyer was released. During jury selection the judge suggested that an alternate juror be

chosen and the prosecutor agreed, so long as the alternate did not participate in deliberations. But the court stated, "I like to have all 13 deliberate." He then asked the defendant, "I understand that the State would resist. Do you have any objection to having 13 jurors?" The defendant had no objection. Nonetheless, the prosecutor warned the court that its decision may be reversible error. No explanation was given to the defendant about the consequences of having an extra juror.

[¶ 4.] The court read preliminary instructions to the jury, including instructions on the burden of proof and the presumption of innocence. During the trial, Nelson took the stand in his own defense in the middle of the State's case in chief. However, it was at Nelson's suggestion to "save time" that he be allowed to take the stand and respond to the State's videotape evidence. Nelson was not then informed of his right to remain silent and his right not to testify under the Fifth Amendment.[1] The next day, when Nelson had trouble locating witnesses, he sought a continuance. The court denied the request.

[¶ 5.] At the close of the evidence, the trial court instructed the jury, but did not re-read the preliminary instructions. Thus, the jury did not again hear instructions on reasonable doubt and the presumption of innocence. The court told the jury, "This is the place that I would re-read the preliminary instructions, but to save time just consider that I have read them here and refer to them when you get into the jury room." He admonished the jury to consider all the instructions as a whole, including the preliminary instructions. The jury was given copies of all the instructions. As the court was sending the jury out to deliberate, the prosecutor asked, "Are you going to discharge the alternate juror?" The court responded, "No. We are going to let them all deliberate together. All 13 are going to deliberate." After an hour, the jury found Nelson guilty of the three offenses. On each count, Nelson was sentenced to one year in jail, a one thousand dollar fine, and payment of restitution. The sentences on two of the counts were suspended, provided he serve the jail time and pay the fine on the remaining count.

[¶ 6.] Nelson now appeals his convictions, raising these issues: (1) Whether the trial court's failure to instruct the jury on the presumption of innocence and the standard of proof at the end of the case constitutes plain error. (2) Whether sending thirteen jurors out to deliberate constitutes plain error. (3) Whether Nelson was denied his constitutional right to a fair trial; specifically, whether the trial court's decision to have Nelson put on witnesses out of order, the court's urging Nelson to testify during the State's case, the court's refusal to grant a continuance for Nelson to locate witnesses, and the decision to allow thirteen jurors to deliberate, was a denial of due process of law.[2] (4) Whether the trial court had subject matter jurisdiction to hear a case involving alleged cruelty to livestock absent compliance with SDCL chapter 40–1.[3]

---

1. *See* SDCL 19–2–8 (excepting criminal defendants who take the stand from court's duty to advise on right against self-incrimination); *State v. Dace*, 333 N.W.2d 812, 817 (S.D.1983)(notwithstanding statutory exception, if accused is acting pro se, court well advised to remind accused of right against self-incrimination).

2. Except for the thirteen jurors question, the remainder of this issue lacks sufficient merit for discussion.

3. Nelson argues that the trial court did not have subject matter jurisdiction to hear an animal cruelty case absent compliance with SDCL chapter 40–1. Under SDCL 40–1–25, the South Dakota Animal Industry Board administers and enforces matters dealing with livestock, such as horses, including "[m]ethods of investigating reported inhumane treatment...." SDCL 40–1–25(6). SDCL 40–1–27, the statute under which

Nelson was charged, states that: "No person owning or responsible for the care of an animal may inhumanely treat such animal. A violation of this section is a Class 1 misdemeanor." SDCL 7–16–9 provides: "The state's attorney shall appear in all courts of his county and prosecute and defend on behalf of the state or his county all actions or proceedings, civil or criminal, in which the state or county is interested or a party." When read together, §§ 7–16–9 and 40–1–27 give the state's attorney authority to prosecute misdemeanors regardless of who performs the investigation. Nothing in SDCL chapter 40–1 suggests that misdemeanor jurisdiction over mistreatment of animals in South Dakota courts is dependent on some action by the Animal Industry Board. Nelson's claim that the court lacked subject matter jurisdiction is meritless.

## Analysis and Decision

[¶ 7.] To preserve issues for appellate review litigants must make known to trial courts the actions they seek to achieve or object to the actions of the court, giving their reasons. SDCL 23A–44–13. Issues not advanced at trial cannot ordinarily be raised for the first time on appeal. *State v. Henjum*, 1996 SD 7, ¶ 13, 542 N.W.2d 760, 763 (citations omitted). Where error has not been preserved by objection or otherwise, our inquiry is limited to whether the court committed plain error. *State v. Satter*, 1996 SD 9, ¶ 11, 543 N.W.2d 249, 251. "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of a court." SDCL 23A–44–15 (Rule 52(b)). Unlike harmless error review under SDCL 23A–44–14 (Rule 52(a)), in which the State has the burden of proving the error was not prejudicial, with plain error analysis the defendant bears the burden of showing the error was prejudicial. *United States v. Olano*, 507 U.S. 725, 737–41, 113 S.Ct. 1770, 1779–81, 123 L.Ed.2d 508 (1993), *aff'd in part, rev'd in part*, 62 F.3d 1180 (9thCir.1995), *cert. denied*, — U.S. ——, 117 S.Ct. 303, 136 L.Ed.2d 221 (1996).

[¶ 8.] Plain error requires (1) error, (2) that is plain, (3) affecting substantial rights; and only then may we exercise our discretion to notice the error if (4) it "seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *Johnson v. United States*, 520 U.S. 461, 466–67, 117 S.Ct. 1544, 1549, 137 L.Ed.2d 718 (1997)(alterations in original)(quoting *Olano*, 507 U.S. at 732, 113 S.Ct. at 1776, *quoting United States v. Young*, 470 U.S. 1, 15, 105 S.Ct. 1038, 1046, 84 L.Ed.2d 1 (1985), *in turn quoting United States v. Atkinson*, 297 U.S. 157, 160, 56 S.Ct. 391, 392, 80 L.Ed. 555 (1936)(pre-federal rules case codified in Rule 52(b))). We invoke our discretion under the plain error rule cautiously and only in "exceptional circumstances." *Henjum*, 1996 SD 7, ¶ 14, 542 N.W.2d at 763; *State v. Davi*, 504 N.W.2d 844, 855 (S.D.1993)(citing *State v. Brammer*, 304 N.W.2d 111, 114 (S.D.1981)). Such circumstances may include cases in which " 'a miscarriage of justice would otherwise result,' " i.e., a defendant is actually innocent. *See Young*, 470 U.S. at 15, 105 S.Ct. at 1046, *on remand*, 758 F.2d 514 (10thCir.1985), *on reconsideration*, 767 F.2d 737 (10thCir.1985)(quoting *United States v. Frady*, 456 U.S. 152, 163 n. 14, 102 S.Ct. 1584, 1592 n. 14, 71 L.Ed.2d 816 (1982)); *see also* Sawyer v. *Whitley*, 505 U.S. 333, 339–40, 112 S.Ct. 2514, 2518–19, 120 L.Ed.2d 269 (1992), *reh'g denied*, 505 U.S. 1244, 113 S.Ct. 21, 120 L.Ed.2d 948 (1992). But our discretion is not confined to cases of actual innocence because error may "seriously affect[ ] the fairness, integrity or public reputation of judicial proceedings" tangential to questions of innocence. *Olano*, 507 U.S. at 736, 113 S.Ct. at 1779. When considering any error, we examine all the circumstances:

> In reviewing criminal cases, it is particularly important for appellate courts to relive the whole trial imaginatively, and not to extract from episodes in isolation abstract questions of evidence and procedure. To turn a criminal trial into a quest for error no more promotes the ends of justice than to acquiesce in low standards of criminal prosecution.

*Johnson v. United States*, 318 U.S. 189, 202, 63 S.Ct. 549, 555, 87 L.Ed. 704 (1943)(Frankfurter, J., concurring), *reh'g denied*, 318 U.S. 801, 63 S.Ct. 826, 87 L.Ed. 1164 (1943).

## Failure to Read All Instructions at Close of Evidence

[¶ 9.] A judge has the duty to fully instruct the jury on the applicable law. *State v. Eagle Star*, 1996 SD 143, ¶ 15, 558 N.W.2d 70, 73. Furthermore, the instructions must be given orally. SDCL 23A–25–4 states: "Before final argument the court *shall read* its instructions to the jury ...." (emphasis added). SDCL 15–6–51(a) provides in part:

> After the close of evidence and prior to argument the court shall charge the jury. In charging the jury the court shall instruct as to the law of the case.... *The court, on its own motion or upon the motion of any party, after the jury is selected and sworn, but prior to opening statements, may in its discretion, give general and preliminary instructions to*

*the jury* on the conduct of the trial, but not on substantive legal issues.

(emphasis added).

■ [¶ 10.] In *Eagle Star*, we noted that "[p]rior to hearing all the evidence presented, the trial court is not in a position to fully instruct the jury on the applicable law." *Eagle Star*, 1996 SD 143, ¶ 19, 558 N.W.2d at 74. Preliminary instructions serve to inform jurors of their "function, the presumption of innocence, the burden of proof and other preliminary matters aimed at making the trial more understandable." *Id.* ¶ 20 (footnote omitted). The use of preliminary instructions, however, never relieves the court of its duty to comprehensively inform jurors of the law at the close of the evidence. *Id.* (citing SDCL 23A–25–4; *United States v. Ruppel*, 666 F.2d 261, 274 (5thCir.1982), *reh'g denied*, 671 F.2d 1378 (5thCir.1982), *cert. denied*, 458 U.S. 1107, 102 S.Ct. 3487, 73 L.Ed.2d 1369 (1982), *reh'g denied*, 458 U.S. 1132, 103 S.Ct. 17, 73 L.Ed.2d 1402 (1982)). That jurors will remember instructions given at the beginning of a case may presume too much.

[¶ 11.] Reading a complete set of instructions after the evidence ensures that the jury hears and considers all the applicable law before deliberations. Moreover, reading aloud aids understanding if the court reads the instructions intelligibly. *See* Veda R. Charrow & Myra K. Erhardt, Clear & Effective Legal Writing 32 (1986)(discussing the importance of drafting jury instructions in a style appropriate for oral comprehension); David Mellinkoff, Legal Writing: Sense & Nonsense 88–89 (1982)(emphasizing that instructions should "speak directly to the jurors"). Repetition by first hearing the instructions and then reading them enhances recall as well as comprehension. *See* Saul M. Kassin & Lawrence S. Wrightsman, The American Jury on Trial: Psychological Perspectives 146 (1988)("Preliminary instructions ... are not a substitute for the final charge, but a supplement to it. There is no reason why juries should not be charged twice, in order to ensure the information processing advantages afforded on each occasion.")

■ [¶ 12.] Nelson asks us to stamp as error the failure to read to the jury at the end of the case the instructions on the presumption of innocence and the burden of proof. Our statutes are clear on this point: "[T]he court *shall read* its instructions to the jury" at the close of the evidence and before final argument. SDCL 23A–25–4. We interpret the word "shall" as "a mandatory directive" conferring no discretion. SDCL 2–14–2.1. " 'This [C]ourt assumes that statutes mean what they say and that the legislators have said what they meant.' " *Mid–Century Ins. Co. v. Lyon*, 1997 SD 50, ¶ 9, 562 N.W.2d 888, 891 (quoting *In re Famous Brands, Inc.*, 347 N.W.2d 882, 885 (S.D.1984)). In addition, we bear the responsibility for making the "rules of practice and procedure" for South Dakota courts and, when called upon to do so, we review proceedings to guarantee that each criminal defendant receives due process according to law. SD Const. Art. V, § 12.

■ [¶ 13.] When a court materially deviates from the statutory procedures it is bound to uniformly and fairly administer, we must say the court erred. Thus, the first element of the plain error test is established. As for the second element, this case was tried seven months after *Eagle Star* was handed down; trial courts were therefore informed that they must read all jury instructions at the close of the evidence. As the word "plain" means "clear" or "obvious," we believe the error here was plain. *Olano*, 507 U.S. at 734, 113 S.Ct. at 1777. Thirdly, the error must affect substantial rights. This is a more difficult question because although the burden of proof and presumption of innocence instructions were not read to the jury for a second time, the jury received all the written instructions. To qualify for jury duty, one must be able to "read, write, and understand the English language." SDCL 16–13–10. We must presume, therefore, that the jurors could read the instructions for themselves. Yet, we cannot assume they actually read all the instructions in the jury room, even if each one was given a copy. *See State v. Norris*, 10 Kan.App.2d 397, 699 P.2d 585, 588 (Kan.App.1985)(divergence in literacy and reading comprehension may leave some jurors less instructed). "Instruc-

tion of the jury is one of the most fundamental duties of the court and it is only through their oral delivery that the court can be assured that each member of the jury has actually received all of the instructions." *Id.* at 588.

[¶ 14.] The State, relying on *Eagle Star*, argues that overwhelming evidence of Nelson's guilt was presented; thus, even if the trial court had properly read instructions on the presumption of innocence and reasonable doubt, the jury would have returned a guilty verdict. *See, e.g., United States v. Davila–Natér*, 474 F.2d 270 (5thCir.1973), *reh'g denied*, 474 F.2d 1348 (5thCir.1973); *Griffith v. State*, 264 Ga. 326, 444 S.E.2d 794 (Ga 1994)(better rule to read comprehensive instructions at end of case, but error in failing to repeat preliminary instructions was harmless). The Fifth and Fourteenth Amendments to the United States Constitution and Art. VI, § 2 of the South Dakota Constitution provide that no citizen can be deprived of liberty without due process of law. These tenets stand unqualified and hold fast, even when evidence is overwhelming. *See e.g., State v. Johnson*, 173 Ariz. 274, 842 P.2d 1287, 1289 (Ariz 1992), *vacated*, 173 Ariz. 274, 842 P.2d 1287 (Ariz 1992)(overwhelming evidence will not relieve courts of their obligation to ensure that "judicial process is properly accomplished"). Each person is constitutionally entitled to a fair trial. "This [C]ourt has consistently held that a defendant is not guaranteed a perfect trial, 'but every accused, innocent or guilty, is entitled to a fair trial.'" *State v. Pellegrino*, 1998 SD 39, ¶ 25, 577 N.W.2d 590, 600, *reh'g denied*, May 22, 1998 (quoting *State v. Raymond*, 540 N.W.2d 407, 410 (S.D.1995), *appeal after remand*, 1997 SD 59, 563 N.W.2d 823).

[¶ 15.] Most courts having wrestled with this question deem it serious error to fail to repeat preliminary instructions at the end of the evidence. We take particular guidance from a line of Arizona cases, all considering criminal appeals from the same trial judge. In *State v. Jackson*, 139 Ariz. 213, 677 P.2d 1321 (Ariz.Ct.App.1983), the Arizona Court of Appeals reviewed a drug possession conviction in which the trial court read preliminary instructions to the jury, including the burden of proof instruction and a definition of reasonable doubt. *Id.* at 1324. When the judge charged the jury, however, she did not reinstruct on the prosecutor's burden of proving each element beyond a reasonable doubt. *Id.* As in this appeal, however, the jury received a copy of the preliminary instructions. *Id.* The court found that the trial court committed error, but not reversible error. *Id.* at 1325.

[¶ 16.] In *State v. Kinkade*, 140 Ariz. 91, 680 P.2d 801 (Ariz 1984), *appeal after remand*, 147 Ariz. 250, 709 P.2d 884 (Ariz 1985), the Arizona Supreme Court reviewed a defendant's first-degree murder and armed robbery convictions. As was the situation in *Jackson*, the trial court preliminarily instructed the jury on reasonable doubt. *Id.* at 804. The judge, however, did not re-read the instruction to the jury at the end of the trial. *Id.* Once again, the Arizona Supreme Court held that the failure to re-read the instruction was error, but not fundamental error. *Id.* at 804–05.

[¶ 17.] Eight years later, the Arizona Supreme Court reviewed another criminal case from same trial judge, who apparently continued her practice of not re-reading preliminary instructions. *Johnson*, 842 P.2d at 1288. The defendant was charged with first-degree burglary and two counts of aggravated assault. *Id.* at 1287. Again, the trial judge instructed the jury at the beginning of the proceedings on the presumption of innocence and the burden of proof. *Id.* At the close of the evidence, the judge did not repeat the preliminary instructions, leaving the jury with only the preliminary definition of reasonable doubt. *Id.* In addition, the judge, after the prosecution asked for a modification of the special verdict form, gave an erroneous oral instruction to the jury on the burden of proof. *Id.* at 1288. This instruction was never reduced to writing and given to the jurors, unlike the preliminary instructions and final instructions. *Id.* No longer able to sustain this trial judge's continued disregard for the rules, the court reversed the convictions. *Id.* at 1290. In a strong opinion, the court reiterated the long-standing principle that failure to re-read the preliminary in-

structions at the close of the evidence, including those on the burden of proof and reasonable doubt, was error. *Id.* at 1289. This conduct descended to prejudicial error because the trial judge not only failed to re-read the preliminary instructions, but she also gave an erroneous oral instruction. *Id.* Those two errors, acting together, constituted reversible plain error. *Id.*

[¶ 18.] Finally, in *State v. Romanosky*, 176 Ariz. 118, 859 P.2d 741 (Ariz 1993)(en banc), the Arizona Supreme Court again faced a criminal appeal alleging the same error by the same judge. *Id.* at 742. The defendant was convicted of armed robbery and felony-murder. *Id.* at 741–42. The Court was asked to decide whether the failure of the trial court to instruct the jury on reasonable doubt at the end of the evidence was reversible error. *Id.* at 742. The trial court had read a preliminary instruction stating that the prosecutor had to prove every element of the crimes beyond a reasonable doubt. *Id.* But the judge did not define the crimes for the jury until the end of the trial and did not re-instruct on the reasonable doubt standard at the close of the evidence. *Id.* Failure to re-instruct the jury on the burden of proof, the Arizona Supreme Court held, was reversible error. *Id.* at 743–44.

As noted in *Johnson*, 173 Ariz. at 276, 842 P.2d at 1289, the failure to give a reasonable doubt instruction at the end of the case "is not necessarily obviated by furnishing written copies of instructions to jurors, or by the fact that lawyers have argued the instructions in summation." This trial involved over 25 witnesses. The instructions received by the jury on the first day of trial included only a statement of the basic principle of reasonable doubt without any reference to defined elements of defined crimes. The crimes themselves were undefined until the end of the case, and the jury was not told at the end of the case that the reasonable doubt standard applied to each element of the defined crimes. From our reading of the record, defendant's only defense was the doctrine of reasonable doubt. The attenuated instruction given at the start of the case was insufficient, given the paramount importance of the doctrine of reasonable doubt.

We cannot say the error was harmless in this capital case.

*Id.* Because we ought to consider error within the totality of a trial, before deciding whether the failure to re-read critical instructions at the end of the case affected substantial rights, we will next examine the court's decision to allow thirteen jurors to deliberate.

### Thirteen Jurors

[¶ 19.] SDCL 23A–18–2 states: "Juries shall consist of twelve members...." Further, SDCL 23A–20–28 provides in relevant part:

A court may direct that not more than six jurors in addition to the regular jury members be called and impaneled to sit as alternate jurors.... *An alternate juror who does not replace a regular juror shall be discharged after the jury retires to consider its verdict.*

(emphasis added). This statute unambiguously mandates that alternate jurors be dismissed when the jury begins its deliberations. The trial court's inclusion of the thirteenth juror in the deliberations clearly violated the law. *Cf. Olano*, 507 U.S. at 737–41, 113 S.Ct. at 1779–81. It would be a different matter if both sides made an informed agreement to leave the alternate on the jury during deliberations. Because the thirteenth juror participated in deliberations we need not speculate, as the Supreme Court did in *Olano*, on what potential influence the juror had on the other members of the jury. 507 U.S. at 739, 113 S.Ct. at 1780. All thirteen were polled at the end of the trial and all said they voted guilty on each count. *See United States v. Ottersburg*, 76 F.3d 137 (7thCir.1996), *decision clarified on denial of reh'g*, 81 F.3d 657 (7thCir.1996); *People v. Babbington*, 286 Ill. App.3d 724, 222 Ill.Dec. 122, 676 N.E.2d 1326 (Ill.App.1997), *reh'g denied* Mar. 13, 1997, *appeal denied*, 173 Ill.2d 529, 226 Ill. Dec. 134, 684 N.E.2d 1337 (Ill.1997). Nor do we think this pro se defendant's assent to the court's question about having thirteen jurors was an informed waiver. If not ambiguous, the court's request of the defendant about whether he wanted thirteen jurors was without any warning or explanation about the pitfalls of having an extra

juror in deliberations. He was never told that not only must the thirteen be unanimous to convict, but they also had to be unanimous to acquit. What influence the additional juror had upon the verdict is indeterminable. We deem this plain error.

### Errors Affecting Substantial Rights

[¶ 20.] Having determined that the court committed plain error in both its instructions to the jury and in the number of jurors allowed to deliberate, we must decide whether these errors affected substantial rights. Each of these errors, standing alone, might not be sufficient to meet the third prong of the *Olano* standard. *Olano*, 507 U.S. at 737–741, 113 S.Ct. at 1779–81. Together, however, they prejudiced the defendant's rights and undermined the "fairness, integrity, or public reputation of judicial proceedings." *Atkinson*, 297 U.S. at 160, 56 S.Ct. at 392; *see generally Johnson*, 842 P.2d at 1289–90. Holding to the notion that the plain error rule must be applied only in "exceptional circumstances," *Henjum*, 1996 SD 7, ¶ 14, 542 N.W.2d at 763, we nonetheless think this case calls for us to exercise prudent discretion to ensure stability and conformity in the trial process. In *Eagle Star*, we said that trial courts must read all the instructions at the end of the case. It would have taken the court but a few minutes to read them all, and it would have been a simple matter to discharge the thirteenth juror. We take heed from the Arizona experience. By repeatedly concluding that disregard of fundamental trial procedures constituted harmless error, the Arizona Supreme Court only seemed to encourage continued errant procedure. Eventually, it led to reversal in two major cases. When justice is our goal, the truest means of knowing whether a judgment is reliable is our faithful adherence to process.

[¶ 21.] Reversed and remanded for a new trial.

[¶ 22.] MILLER, Chief Justice, and SABERS, AMUNDSON, and GILBERTSON, Justices, concur.

