#25392-a-JKM
**2010 SD 52**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

STATE OF SOUTH DAKOTA,                          Plaintiff and Appellee,

v.

STACY LYNN BECK,                          Defendant and Appellant.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT
OF THE FIFTH JUDICIAL CIRCUIT
BROWN COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE JACK R. VON WALD
Judge

\* \* \* \*

MARTY J. JACKLEY
Attorney General

JOHN M. STROHMAN
Assistant Attorney General                          Attorneys for plaintiff
Pierre, South Dakota                          and appellee.

JAMIE L. DAMON
Pierre, South Dakota

RONALD A. PARSONS, JR. of
Johnson, Heidepriem &
  Abdallah, LLP                          Attorneys for defendant
Sioux Falls, South Dakota                          and appellant.

\* \* \* \*

CONSIDERED ON BRIEFS
ON APRIL 26, 2010

OPINION FILED **06/23/10**

#25392

MEIERHENRY, Justice

[¶1.]     Stacy Lynn Beck was found guilty of child abuse in violation of SDCL 26-10-1.  The abuse involved an injury to S.S., a nine-month-old girl.  Beck appeals.

## FACTS AND BACKGROUND

[¶2.]     S.S.'s injury consisted of a centimeter to a centimeter and a half laceration at the lower opening of her vagina.  The injury appeared during a diaper change while S.S. was at daycare in Aberdeen, South Dakota.  Beck, who was employed by the daycare, took S.S. into the changing room to change her diaper because she noticed that S.S. had "bowel movement on the outside of her clothing."  Beck testified that she began to wipe the feces from S.S. and saw "profuse" bleeding.  Beck claimed she could not determine whether the bleeding was from S.S.'s anus or vagina.

[¶3.]     Because of the severity of the bleeding, S.S. was taken to the hospital emergency room for examination.  Dr. Falk, an emergency room doctor, examined S.S. and determined that S.S. had sustained a deep laceration to her vagina.  Unable to stop the "active bleeding," Dr. Falk transferred S.S. by helicopter to specialists in Sioux Falls, South Dakota.

[¶4.]     The specialists who examined S.S. were Dr. Edward Mailloux, a pediatrician with Child's Voice,[1] and Dr. Keith Hansen, a pediatric and adolescent gynecologist.  Dr. Mailloux concluded that S.S. was a victim of physical abuse.  Dr. Hansen's examination revealed that the tear to S.S.'s vagina went "down deep into

---

1.     Child's Voice is a child abuse evaluation center.

-1-

that muscle" and "hit some pretty big blood vessels that were squirting blood." Dr. Hansen applied sutures and stopped the bleeding. He also concluded that S.S.'s injury was "consistent with abuse."

[¶5.]    Beck was charged with abuse or cruelty to a minor in violation of SDCL 26-10-1. The case was tried to a jury in September 2008. All three treating physicians testified that S.S.'s injury was consistent with abuse. Beck testified and claimed she did not know if she caused the injury to S.S., but that if she did, it was accidental. The jury found Beck guilty. Beck appeals, raising five issues: (1) whether the evidence was sufficient to prove the charge beyond a reasonable doubt; (2) whether Beck is entitled to a new trial based on prosecutorial misconduct; (3) whether the circuit court erred in denying Beck's motion for a new trial for not instructing the jury on the statutory defense of reasonable force; (4) whether Beck is entitled to a new trial based on ineffective assistance of counsel; and, (5) whether Beck was denied a fair trial by the cumulative effect of the errors contained in the record.

## ANALYSIS

*Sufficiency of the Evidence*

[¶6.]    Beck was convicted of violating SDCL 26-10-1. SDCL 26-10-1 provides in part that:

> Any person who abuses, exposes, tortures, torments, or cruelly punishes a minor in a manner which does not constitute aggravated assault, is guilty of a Class 4 felony. If the victim is less than seven years of age, the person is guilty of a Class 3 felony. The use of reasonable force, as provided in § 22-18-5, is a defense to an offense under this section.

#25392

The elements for this crime include (1) that Beck abused, exposed, tortured, tormented, or cruelly punished S.S. and (2) that S.S. was less than seven years of age. *Id.* Only the first element is at issue in this case. Beck claims that the State's evidence failed to prove beyond a reasonable doubt that she had the criminal intent to abuse, expose, torture, torment, or cruelly punish S.S.

[¶7.] Beck's claim of insufficient evidence is viewed in the light most favorable to the verdict. State v. Carter, 2009 SD 65, ¶44, 771 NW2d 329, 342. The question is whether "there is evidence in the record which, if believed by the fact finder, is sufficient to sustain a finding of guilt beyond a reasonable doubt." *Id.* (quoting State v. Buchholz, 1999 SD 110, ¶33, 598 NW2d 899, 905). This Court will not resolve conflicts in the evidence, assess the credibility of witnesses, or reevaluate the weight of the evidence. *Id.* (citing State v. Shaw, 2005 SD 105, ¶19, 705 NW2d 620, 626). "If the evidence, including circumstantial evidence and reasonable inferences drawn therefrom, sustain[s] a reasonable theory of guilt, a guilty verdict will not be set aside." *Id.* (citing *Shaw*, 2005 SD 105, ¶19, 705 NW2d at 626).

[¶8.] Beck argues that the circuit court did not require the State to prove criminal intent and that the jury applied the statute as if it were a strict liability crime. We disagree. The circuit court instructed the jury that "[i]n the crime of Abuse of or Cruelty to a Minor the defendant must have criminal intent," which means "intentionally [doing] an act which the law declares to be a crime."[2] The jury

---

2.     SDCL 22-1-2 defines "intent" and "intentionally" as "a specific design to cause a certain result or, if the material part of a charge is the violation of a

(continued . . .)

-3-

was instructed that "[t]he intent with which an act is done is shown by the circumstances surrounding the act, the manner in which it is done, and the means used." Criminal intent is regularly shown by circumstantial evidence. *See* State v. Guthrie, 2001 SD 61, ¶48, 627 NW2d 401, 421 ("All elements of a crime, including intent . . . may be established circumstantially." (citation omitted)). These instructions demonstrate that the State was required to prove criminal intent.

[¶9.] It was established at trial that S.S. was uninjured prior to Beck taking her into the changing room. Beck changed the soiled diaper. The soiled diaper contained no blood. The evidence indicated that during the diaper change S.S. suffered a deep laceration on the lower opening of her vagina, similar to an episiotomy. The laceration bled profusely, soaking the clean diaper. Dr. Falk testified that this injury could not have "occurred spontaneously" and would have required "significant force." Similarly, Dr. Mailloux testified that S.S. suffered "very significant genital trauma" that was not the result of "appropriate" wiping when changing a diaper. Finally, Dr. Hansen testified that S.S.'s injury was the result of "non-accidental trauma" that was "consistent with abuse." This evidence and the natural inferences drawn therefrom sustain a reasonable theory of guilt. *See id.* (citing *Shaw*, 2005 SD 105, ¶19, 705 NW2d at 626).

---

(. . . continued)
prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, a specific design to engage in conduct of that nature."

*Prosecutorial Misconduct*

[¶10.]    Although Beck did not object at trial or raise this issue in her motion for a new trial, she claims on appeal that her trial was unfair because of prosecutorial misconduct.  Generally, in order to give the circuit court an opportunity to correct an error, a party must object at trial.  State v. Gard, 2007 SD 117, ¶15, 742 NW2d 257, 261.  The South Dakota Rules of Criminal Procedure provide that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of a court."  SDCL 23A-44-15.  We have said that "to recognize the rule, however, is not to say that every error that occurs at trial rises to the level of plain error, for the plain error rule must be applied cautiously and only in exceptional circumstances."  State v. Davi, 504 NW2d 844, 855 (SD 1993) (quoting State v Brammer, 304 NW2d 111, 114 (SD 1981)).  "With plain error analysis, the defendant bears the burden of showing the error was prejudicial."  State v. Nelson, 1998 SD 124, ¶7, 587 NW2d 439, 443.

[¶11.]    To demonstrate plain error, Beck must establish that there was: "(1) error, (2) that is plain, (3) affecting substantial rights; and only then may we exercise our discretion to notice the error if (4) it 'seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings.'"  State v. Mulligan, 2007 SD 67, ¶26, 736 NW2d 808, 818 (citing *Nelson*, 1998 SD 124, ¶8, 587 NW2d at 443 (quoting Johnson v. United States, 520 US 461, 466-67, 117 SCt 1544, 1549, 137 LEd2d 718 (1997))).

[¶12.]    Beck bases her plain error claim on the prosecutor's statements during closing argument.  First, she claims that the prosecutor misstated the law by

suggesting that criminal intent was not required. Beck's claim is not supported by the record. The prosecutor repeatedly told the jury that the State had the burden to prove intent. The prosecutor explained intent as follows: "[t]o have general intent [Beck] did not need to intend to cause this injury. All we need to show is that she was deliberate and reckless in creating this downward push that created the injury." Beck has failed to show that these statements regarding criminal intent were error.

[¶13.]     Next, Beck asserts that the prosecutor misstated the evidence. The alleged misstatements were (1) that Beck "exposed [S.S.] to this foreseeable harm by using such reckless force, jabbing down at her, trying to anchor her pelvis down to the table" and (2) that the doctors testified as to how this injury occurred. In *State v. Smith*, this Court discussed the parameters of a prosecutor's closing arguments as follows:

> What may a prosecutor do in closing arguments? He or she may "discuss the evidence, pointing out discrepancies and conflicts in the testimony, and argue that the evidence in the record supports and justifies a conviction. . . . [He or she] may make remarks, not based on the record, which concern matters of general knowledge or experience." A crime involving outrageous conduct may warrant stronger words against the accused in the closing arguments than might otherwise be justified. The prosecutor may cross the line when he or she injects "unfounded or prejudicial innuendo into the proceedings . . . [or appeals] to the prejudices of the jury."

1999 SD 83, ¶46, 599 NW2d 344, 354 (internal citations omitted). Likewise, we have said that

> [i]n their arguments to the jury, counsel must keep within reasonable bounds, confine themselves to the evidence, and not go beyond the record to appeal to the passions or prejudices of the jury. This, of course, does not prevent them from making

-6-

reasonable comment on the facts as shown by the evidence or drawing reasonable inferences from the facts.

Cooper v. Holscher, 60 SD 83, 243 NW 739, 739-40 (1932).

[¶14.] On direct examination, the prosecutor asked Dr. Mailloux if it was possible for a person to apply enough pressure to a child's vagina to cause an injury similar to S.S.'s. Dr. Mailloux confirmed this was possible, but stated that a "significant amount of force" would be required to cause a "significant injury" like that suffered by S.S. Dr. Hansen testified S.S.'s injury resulted from downward pressure from her vagina toward her anus. The prosecutor's arguments were a reasonable inference from the doctors' testimony. Consequently, Beck has failed to show that the statements constituted prosecutorial misconduct.

[¶15.] Finally, Beck argues that the prosecutor misstated the evidence and inappropriately injected personal knowledge and opinion by telling the jury that:

> I have studied the deepness of [S.S.'s] injury. I have studied the downward angle of this injury, and I've compared that, what I can see with my own eyes, to the medical evidence of three doctors who said with 100 percent certainty the fact and circumstances and the manner in this case show me this was criminal child abuse because this does not happen during a normal, routine, standard-of-care diaper change.

Beck alleges that this was a misstatement of the evidence because "no doctor testified with 100 percent certainty that this was criminal child abuse." Beck also contends this statement inappropriately injected personal knowledge and opinion by discussing the prosecutor's personal study and opinion of the evidence presented.

[¶16.] Prosecutors are not permitted to misstate the law or evidence in closing argument. *See* Schoon v. Looby, 2003 SD 123, ¶13, 670 NW2d 885, 889-90. Further, this Court has previously recognized that "a lawyer is not allowed to state

personal knowledge of the facts in final argument." *Id.* ¶7 (citing Binegar v. Day, 80 SD 141, 120 NW2d 521, 527 (1963)). "It is not proper for counsel to state facts of his personal experience, or his own knowledge of the facts, unless he has testified thereto as a witness, or to make his argument an avenue for the presentation of unsworn testimony, or for him to insinuate that he has knowledge of facts." *Id.*

[¶17.]      In this case, the prosecution called medical experts to assist the jury in determining the nature and possible cause of S.S.'s injury. As in other cases, the expert testimony was used to "assist the jury in understanding matters that would ordinarily be outside a layperson's knowledge." State v. Schweitzer, 533 NW2d 156, 159 (SD 1995). The prosecutor's interjection of her own observations and conclusions was error that was plain. Nevertheless, Beck still has the burden of showing that the error affected her substantial rights, which "means [s]he must demonstrate that it 'affected the outcome of the [circuit] court proceeding.'" Puckett v. United States, __ US __, __, 129 SCt 1423, 1429, 173 LEd2d 266 (2009) (citing United States v. Olano, 507 US 725, 734, 113 SCt 1770, 1777, 123 LEd2d 508 (1993)). Beck fails in this regard. She is unable to show that the prosecutor's statements affected the outcome of the trial. The jury was instructed that "statements of counsel not supported by the evidence or a fair inference drawn therefrom should not be considered by [the jurors] in arriving at [a] verdict." Consequently, Beck has failed to show that this one statement by the prosecutor, in the context of the entire argument involving extensive evidence and jury instructions, affected her substantial rights.

#25392

[¶18.]     Beck also contends that the prosecutor's statement in final argument that "this was criminal child abuse because this does not happen during a normal, routine, standard-of-care diaper change" constituted prosecutorial misconduct. Beck claims that the prosecutor's use of the term "standard-of-care" was an attempt to lower the burden of proof to that of a preponderance of the evidence instead of beyond a reasonable doubt. However, the jury instruction clearly outlined the required burden of proof as follows:

> The State ha[d] the burden of proving [Beck] guilty beyond a reasonable doubt. Some of you may have served as jurors in civil cases, where you were told that it [wa]s only necessary to prove that a fact is more likely true than not true. In criminal cases, the State's proof must be more powerful than that. It must be beyond a reasonable doubt. Proof beyond a reasonable doubt is proof that leaves you firmly convinced of the defendant's guilt. There are very few things that we know with absolute certainty. In criminal cases the law does not require proof that overcomes every possible doubt. If, based on your consideration of the evidence, you are firmly convinced that the defendant is guilty of the crime charged, you must find her guilty. If, on the other hand, you think there is a real possibility that she is not guilty, you must give her the benefit of the doubt and return a verdict of not guilty.

Beck cannot demonstrate that her substantial rights were affected by the prosecutor's one ambiguous statement in light of the specific instruction to the jury.

*Reasonable Force Instruction*

[¶19.]     Beck brought a motion for a new trial pursuant to SDCL 23A-29-1 and SDCL 15-6-59(a)(1) and (7) on grounds of irregularities in the proceedings and error of law. Both grounds were based on "the [f]ailure to present the statutory defense of

-9-

reasonable force pursuant to SDCL 26-10-1 and SDCL 22-18-5 in instructions to the jury."[3]  The circuit court denied the motion.

[¶20.]        SDCL 15-6-59(a) provides in part that:

A new trial may be granted to all or any of the parties and on all or part of the issues for any of the following causes:

(1)     Irregularity in the proceedings of the court, jury, or adverse party or any order of the court or abuse of discretion by which either party was prevented from having a fair trial; . . .

(7)     Error of law occurring at the trial; provided, that in the case of claim of error, admission, rejection of evidence, or instructions to the jury or failure of the court to make a finding or conclusion upon a material issue which had not been proposed or requested, it must be based upon an objection, offer of proof or a motion to strike.

[¶21.]        An irregularity in the proceedings under SDCL 15-6-59(a)(1) has been recognized as a "departure[] by the court, during the trial of a case, from the due and orderly method of disposition of a case. . . ."  State v. Reyes, 2005 SD 46, ¶30, 695 NW2d 245, 255 (quoting Fechner v. Case, 2003 SD 37, ¶12, 660 NW2d 631,

---

3.     SDCL 26-10-1 provides in part that "[t]he use of reasonable force, as provided in § 22-18-5, is a defense to an offense under this section."  SDCL 22-18-5 provides:

To use or attempt to use or offer to use force upon or toward the person of another is not unlawful if committed by a parent or the authorized agent of any parent, or by any guardian, teacher, or other school official, in the exercise of a lawful authority to restrain or correct the child, pupil, or ward and if restraint or correction has been rendered necessary by the misconduct of the child, pupil, or ward, or by the child's refusal to obey the lawful command of such parent, or authorized agent, guardian, teacher, or other school official, and the force used is reasonable in manner and moderate in degree.

635).  In this case, the circuit court did not depart from an orderly disposition of the case by refusing to instruct the jury on an issue that lacked support in the record.  "[Circuit] courts [are] not required to instruct the jury on issues lacking support in the record."  State v. Well, 2000 SD 156, ¶12, 620 NW2d 192, 194 (quoting State v. Shadbolt, 1999 SD 15, ¶9, 590 NW2d 231, 232).  Instead, circuit courts must only present "those instructions to the jury which are supported by competent evidence and set forth the applicable law."  Shadbolt, 1999 SD 15, ¶12, 590 NW2d at 233 (citations omitted).

[¶22.]        Beck did not request an instruction on reasonable force at trial.  The circuit court's jury instructions did not include a charge concerning the defense of reasonable force because the instruction would have been contrary to Beck's theory of her case.  Beck's theory was that she did not know what caused S.S.'s injury.  Beck never claimed that she was attempting to "restrain or correct" S.S. when changing her diaper.  Consequently, Beck's claim of irregularity in the proceedings under SDCL 15-6-59(a)(1) has no merit.  Furthermore, SDCL 15-6-59(a)(7) provides that a new trial may only be granted when there is an error of law that occurred at trial if "based upon an objection."  In this case, Beck failed to object or offer an instruction on reasonable restraint.  Thus, Beck cannot seek a new trial on the basis of an error of law pursuant to SDCL 15-6-59(a)(7).

*Ineffective Assistance of Counsel*

[¶23.]        Beck argues she received ineffective assistance of counsel at trial.  This Court has "consistently held that claims of ineffective assistance of counsel generally will not be considered on direct appeal."  State v. Garber, 2004 SD 2, ¶38,

674 NW2d 320, 328-29 (citing *State v. Hoeft*, 1999 SD 24, ¶25, 594 NW2d 323, 328 (citing *State v. McGill*, 536 NW2d 89, 94 (SD 1995)); *State v. Petersen*, 515 NW2d 687, 688 (SD 1994); *State v. Sonen*, 492 NW2d 303, 304 (SD 1992); *State v. Wurtz*, 436 NW2d 839, 842 (SD 1989)).  Consistent with our prior cases, we decline to address this claim.

*Cumulative Effect of Alleged Errors*

[¶24.]     Beck argues that the cumulative effect of errors by the circuit court supports a finding that she was denied her "constitutional right to a fair trial." Beck, however, does not assert any specific errors on this issue that resulted in prejudice.  Therefore, we conclude she received a fair trial.  *See* State v. Wright, 2009 SD 51, ¶69, 768 NW2d 512, 534.

[¶25.]     The circuit court is affirmed.

[¶26.]     GILBERTSON, Chief Justice, and KONENKAMP, ZINTER, and SEVERSON, Justices, concur.